OPINION
{¶ 1} Defendant-Appellant J.G. appeals from her adjudication of delinquency, based upon a finding that she committed an offense that would constitute the offense of Robbery, if committed by an adult. J.G. contends that there is insufficient evidence in the record to support her adjudication, and that her adjudication is against the manifest weight of the evidence. In viewing the evidence in a light most favorable to the State, we conclude that the State presented evidence sufficient to establish that J.G. inflicted physical harm upon Robin Shephard, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, and that each element of the offense of Robbery was established beyond a reasonable doubt. Based on the record, we cannot conclude that the trial court lost its way and created a manifest miscarriage of justice. To the contrary, we conclude that the weight of the evidence supports the trial court's decision that J.G. inflicted physical harm upon Shephard, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense. We conclude that the trial court's adjudication of delinquency is not against the manifest weight of the evidence.
 {¶ 2} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 3} Around midnight one night in April, 2003, J.G., a fifteen-year-old girl, and two other girls approached Robin Shephard on Xenia Avenue. After an exchange of words, J.G. grabbed Shephard by the hair and allegedly searched and removed items from Shephard's pockets. J.G. then punched Shephard, and one of the other girls kicked Shephard's feet out from underneath her. J.G. then began kicking Shephard.
 {¶ 4} Shephard was on her cell phone talking to her daughter at the time the three girls approached her. When the fight ensued, the cell phone was knocked out of Shephard's hand, and Shephard was disconnected from her daughter. Shepard's daughter rode her bike to the location of the fight and witnessed J.G. kicking Shephard. Shephard's daughter brought Shephard to a nearby store and called 911. Shephard's other daughter drove to the store and brought the two to their home. Shephard's daughter then called 911 again. Shephard was transported to the hospital for her injuries.
 {¶ 5} Officer Clifford Ullery was dispatched to the location of the altercation on Xenia Avenue, where he located the three girls. J.G. admitted to Officer Ullery that she had fought with Shephard. After interviewing Shephard and returning to the location of the altercation, Officer Ullery placed J.G. under arrest.
 {¶ 6} A complaint was filed alleging that J.G. was delinquent by reason of having committed an act that, if committed by an adult, would constitute the offense of Robbery, in violation of R.C. 2911.02(A)(2), a felony of the second degree. This case proceeded to a bench trial. The trial court found J.G. to be a delinquent child, as alleged in the complaint. At the disposition hearing, the trial court found that continuation in the child's home would be contrary to J.G.'s interest or welfare. The trial court committed J.G. to the legal custody of the Department of Youth Services for Institutionalization for a minimum period of twelve months and a maximum period not to exceed J.G.'s attainment of the age of twenty-one years. From her adjudication of delinquency, J.G. appeals.
 II {¶ 7} J.G. presents two assignments of error, as follows:
 {¶ 8} "The trial court committed reversible error by finding that the state had proved beyond a reasonable doubt that J.G. was guilty of robbery.
 {¶ 9} "The trial court's findings [sic] of guilt was against the manifest weight of the evidence."
 {¶ 10} In her assignments of error, J.G. challenges the sufficiency and the weight of the evidence.
 {¶ 11} "A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492:
 {¶ 12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 13} "In reviewing a judgment to determine whether it is against the manifest weight of the evidence, an appellate court sits as a `thirteenth juror,' reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541." State v.Reed, Champaign App. No. 2002-CA-30, 2003-Ohio-5413, at ¶¶ 12-14.
 {¶ 14} J.G. contends that the State presented insufficient evidence to prove beyond reasonable doubt that she was guilty of Robbery. Specifically, J.G. contends that the State presented insufficient evidence to prove that the requisite element of force was present in the attempt or commission of a theft offense.
 {¶ 15} J.G. was found to have committed an act constituting the offense of Robbery, in violation of R.C. 2911.02(A)(2), which states as follows:
 {¶ 16} "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another[.]"
 {¶ 17} The State is not required to present sufficient evidence to prove that the element of force was present in the commission or attempt of the theft offense, because R.C.2911.02(A)(2) does not require the use of force. The State is required to present sufficient evidence to prove that J.G. inflicted, attempted to inflict, or threatened to inflict physical harm upon Shephard, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense. See R.C. 2911.02(A)(2). J.G. also contends that the State presented insufficient evidence to prove that she inflicted, attempted to inflict, or threatened to inflict physical harm upon Shephard. We disagree.
 {¶ 18} In her testimony, J.G. admitted that she fought with Shephard. J.G. testified that "* * * [W]e started fighting. And I hit her, I was hitting her, I was beating her up, I was getting the best of her. * * * And I had her by her hair and I threw her on the ground and then I kicked her a couple of times." Shephard's daughter testified that she saw J.G. kick her mom in the head and punch her mom in the face. Shephard's daughter also testified that her mom was "bleeding everywhere," including her nose, mouth, ear and head, and that her mom's lip, eye, and wrist were swollen. Officer Clifford Ullery testified that Shephard "looked like she had been beaten up, I think she had a bruise or a black eye and it looked like she had some laceration to her chin, if I can remember, and I know she had some blood on her shirt." We conclude that there is sufficient evidence in this record to prove beyond reasonable doubt that J.G. inflicted physical harm upon Shephard.
 {¶ 19} J.G. also contends that the State presented insufficient evidence to prove that she attempted or committed a theft offense. J.G. testified that she did not take any of Shephard's property during the altercation. In her testimony, J.G. specifically denies taking Shephard's driver's license and keys, and states that she did not even see a key.
 {¶ 20} Although J.G. denies removing any property from Shephard's pockets, Shephard testified that J.G. took her cigarette case, cigarettes, house keys, driver's license, and $4. Shephard testified that J.G. grabbed her by the hair before taking her property and that, as a result, Shephard lost some of her hair. Shephard testified as follows:
 {¶ 21} "Q. * * * After [J.G.] grabs you by the hair what's the next thing that happened?
 {¶ 22} "A. They take the stuff out of my pocket.
 {¶ 23} "* * *
 {¶ 24} "Q. Then what happened?
 {¶ 25} "A. Then she [J.G.] seen I only had $4.
 {¶ 26} "Q. Okay.
 {¶ 27} "A. And then she [J.G.] sucker punched me.
 {¶ 28} "Q. All right. What happens next?
 {¶ 29} "A. [C.S.] knocks my feet out from underneath me.
 {¶ 30} "* * *
 {¶ 31} "Q. Then what happens?
 {¶ 32} "A. Then she [J.G.] started kicking me in my head, [C.S.] kept telling her go ahead, beat her up, beat her up more.
 {¶ 33} "* * *
 {¶ 34} "Q. What was taken from you?
 {¶ 35} "A. Cigarette case, house keys, and my driver's license.
 {¶ 36} "Q. What, if anything was ever recovered?
 {¶ 37} "A. My cigarette case, which was empty.
 {¶ 38} "Q. All right.
 {¶ 39} "A. And that's all.
 {¶ 40} "Q. All right. What about your driver's license?
 {¶ 41} "A. I haven't got them back.
 {¶ 42} "Q. What about your house key?
 {¶ 43} "A. No, I haven't got those back.
 {¶ 44} "Q. What about your $4?
 {¶ 45} "A. No.
 {¶ 46} "Q. What about your cigarettes?
 {¶ 47} "A. No.
 {¶ 48} "Q. Now, who took those items from you?
 {¶ 49} "A. [J.G.] and [C.S.].
 {¶ 50} "Q. And was that before or after you were injured or —
 {¶ 51} "A. After I was injured.
 {¶ 52} "Q. Now, who, if anyone has consent to take your items?
 {¶ 53} "A. Nobody.
 {¶ 54} "* * *
 {¶ 55} "Q. * * * With regard to those items did anyone have permission or were you giving it up because you wanted to?
 {¶ 56} "A. I just give it to them, let them take it so they would leave me alone.
 {¶ 57} "Q. All right, but you weren't doing that voluntarily or willing, were you?
 {¶ 58} "A. No, but there was three of them and just one of me."
 {¶ 59} Shephard's daughter testified that before she was disconnected from talking to her mom on the phone, she heard one of the girls ask her mom if she wanted to buy any crack and ask her if she had any money. Although Shephard's daughter testified that she never saw any of the girls reach in her mom's pockets and remove her property, she did testify to the following:
 {¶ 60} "Q. All right. Do you know what, if anything she [Shephard] always — were there any items that she carried with her when she left?
 {¶ 61} "A. Her cell phone, her cigarette case, and her house keys.
 {¶ 62} "Q. All right. Now, were you aware of what, if any of those items she had when you came and got her?
 {¶ 63} "A. Her cell was broken, her cigarette case was missing, and our house keys were missing."
 {¶ 64} Officer Ullery also testified that Shephard said that the items were removed, although he wasn't sure "if she knew exactly who removed them, they were all participating." Officer Ullery further testified that when he returned to the scene, he found Shephard's destroyed cell phone and her cigarette case, but not her keys. Although Officer Ullery testified that J.G. voluntarily emptied her pockets and there were no keys or a driver's license in her pockets, he admitted that he did not pat her down.
 {¶ 65} In viewing the evidence in a light most favorable to the State, we conclude that the State presented evidence sufficient to prove beyond reasonable doubt that J.G. inflicted physical harm upon Shephard, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, and that each element of the offense of Robbery was established. We conclude that the trial court could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 66} J.G. contends that the testimony of Shephard and Shephard's daughter is not credible, because it is inconsistent and they have a motive to lie "to exact revenge for the beating which she suffered at the hands of [J.G.]." J.G. also contends that her testimony was more credible, because she admitted she fought with Shephard, which was an admission against her interest.
 {¶ 67} It is primarily for the factfinder to determine the credibility of the witnesses and the weight to be given to their testimony, because the factfinder has the opportunity to see and hear the witnesses and observe their demeanor. State v. Dehass
(1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212. "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way." State v.Brown, 2002-Ohio-1307, 2002 WL 441315, at *2, citation omitted. After reviewing the testimony of these two witnesses, we cannot conclude that the trial court lost its way in finding them credible.
 {¶ 68} Based on the record, we cannot conclude that the trial court lost its way and created a manifest miscarriage of justice. To the contrary, we conclude that the weight of the evidence supports the trial court's finding that J.G.
 {¶ 69} inflicted physical harm upon Shephard, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense. We conclude that the trial court's adjudication of delinquency is not against the manifest weight of the evidence.
 {¶ 70} Both of J.G.'s assignments of error are overruled.
 III {¶ 71} Both of J.G.'s assignments of error having been overruled, the judgment of the trial court is affirmed.
Grady and Young, JJ., concur.