[Cite as *Palichat v. Palichat*, 2019-Ohio-1379.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| ELIZABETH A. PALICHAT | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-42 |
| | : | |
| v. | : | Trial Court Case No. 2015-DR-69 |
| | : | |
| ERIC G. PALICHAT | : | (Domestic Relations Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of April, 2019.

. . . . . . . . . .

MICHAEL A. HOCHWALT, Atty. Reg. No. 0017688, 500 Lincoln Park Boulevard, Suite 216, Kettering, Ohio 45429
    Attorney for Plaintiff-Appellee

EDWARD F. WHIPPS, Atty. Reg. No. 0011335 and JOHN C. RUIZ-BUENO, III, Atty. Reg. No. 0087043, 495 South High Street, Suite 370, Columbus, Ohio 43215
    Attorneys for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Eric G. Palichat appeals from the trial court's judgment entry overruling his motion to terminate shared parenting and sustaining appellee Elizabeth A. Palichat's motion to modify an existing shared-parenting plan.

{¶ 2} Eric advances three assignments of error. First, he contends the trial court erred in continuing shared parenting instead of awarding him legal custody of the parties' children. Second, he claims the trial court erred in ordering alternating-week parenting time. Third, he asserts that the trial court erred in "dismissing" the evaluations of two expert witnesses and the guardian ad litem "without evaluating them."

{¶ 3} The record reflects that Eric and Elizabeth married in 2005 and divorced in 2016.[1] During the marriage, they had two children who were born in 2012 and 2014. The agreed divorce decree included a shared-parenting plan. In April 2018, Eric moved to terminate shared parenting and to obtain legal custody. In May 2018, Elizabeth moved to modify the shared-parenting plan or, alternatively, for legal custody. Both parties also filed show-cause motions alleging numerous instances of contempt for non-compliance with the existing shared-parenting plan.

{¶ 4} The trial court held a two-day hearing on the motions in September 2018. It heard testimony from nine witnesses. Among others, they included Eric, Elizabeth, Eric's new wife Kelly, psychologist Richard Bromberg, and psychologist Barbara Bergman. The bulk of the testimony consisted of Eric and Elizabeth pursuing a laundry list of purported contempt violations and accusing each other of being uncooperative, controlling, and

---

[1] For purposes of clarity, we will refer to the parties by their first names.

undermining efforts at shared parenting. After hearing the testimony and reviewing various exhibits, including a guardian ad litem's report and reports from Bromberg and Bergman, the trial court found it not in the best interest of the children to designate Eric or Elizabeth the legal custodian. (Doc. #124 at 3.) Instead, the trial court found it in the children's best interest to continue shared parenting under a modified plan. (*Id.*) In support of this decision, the trial court stated:

> * * * The Court is leery about designating one parent the residential parent and legal custodian because neither parent has demonstrated an ability to be fair and objective in decision-making. The Court finds that the fight for control between the parents must end! As a result, the Court finds that shared parenting continues to be in the children's best interests, and the parties shall continue to exercise shared parenting according to the new Shared Parenting Plan set forth in this Entry.

(*Id.*)

{¶ 5} The trial court proceeded to set forth the changes it found necessary and provided the parties with a modified plan. (*Id.* at 3-11.) It then explained:

> The Court has determined that the Shared Parenting Plan above is in the best interests of the children after considering the testimony of the parties, the testimony of the witnesses (especially Drs. Bergman and Bromberg), the GAL, and the exhibits. The Court concludes that the opinions rendered by Drs. Bergman and Bromberg essentially cancelled each other out as they were both equally competent but offered competing recommendations. The Court also reviewed the report issued by the

Guardian ad Litem and carefully considered his recommendations given his expertise and familiarity with the parties and the case. However, because the GAL was not called as a witness, he was excused from the courtroom at the beginning of day 1 of trial and was not present to observe the testimony and demeanor of the parties throughout the proceedings, both of which significantly influenced the decision of the Court.

While Father attempted to portray himself as the more flexible and reasonable of the parties, his testimony and courtroom demeanor betrayed this image. The Court found Father's testimony regarding Mother's immediate implementation of the behavior plan set by [their child's] school to be particularly telling. The parties were notified that [the child] was displaying problematic behaviors at school, so the school created a behavioral plan for [the child] to address the issues. According to the testimony, this information was shared right before Father was to leave town for approximately 16 days. Father complained that Mother immediately began contacting [the child's] doctors and the school to begin addressing the problem, rather than waiting more than two weeks for him to return to town to address the behavioral issues. Further, the Court observed Father to be highly reactive to testimony he did not agree with, at times displaying aggressive body language and constantly smirking and shaking his head to make his feelings known.

By stark contrast, Mother maintained an even, calm demeanor throughout the proceedings even when the testimony about Mother was

very negative. When it was Mother's turn to testify, her explanations made more sense, were more believable, and made Father's accusations in his contempt seem all the more petty. Accordingly, Father's credibility when he testified to his flexibility and Mother's irrationality was significantly undermined, and Mother's credibility was bolstered.

While the Court observed Mother to be the more reasonable and flexible of the parties, the Court does not believe she is so reasonable and flexible that she should be designated the residential parent. The Court still harbors significant concerns about Mother's attempts to undermine Father and provoke him. For this reason, the Court believes the parties should continue to share control of the children while maintaining as little contact as possible.

(*Id.* at 11-12.)

{¶ 6}  After providing the foregoing explanation for its shared-parenting decision, the trial court declined to find either party in contempt for numerous, relatively petty alleged violations of the prior shared-parenting plan. The trial court opined that "the terms of the Plan were impossible to follow, and it would be unjust and inequitable to find either party in contempt for violating the same." (*Id.* at 14.) This appeal by Eric followed.

{¶ 7} In his first assignment of error, Eric claims the trial court erred in continuing shared parenting rather than awarding him legal custody of the parties' children. He first argues that Ohio law does not authorize a trial court "to create its own shared parenting plan or even to modify a plan that has been proposed by either party." (Appellant's brief at 6.) In support, he cites R.C. 3109.04(D)(1)(a) as well as *Schattschneider v.*

*Schattschneider*, 3d Dist. Auglaize No. 2-06-24, 2007-Ohio-2273, and *Koller v. Koller*, 2d Dist. Montgomery No. 22328, 2008-Ohio-758.

{¶ 8} Under R.C. 3109.04(D)(1)(a)(i)-(iii), a trial court can approve an original shared-parenting plan submitted by either or both parents. It also can order one parent to submit a proposed shared-parenting plan if the other parent has submitted one. Although a trial court can disapprove an originally submitted plan and can request modifications, the parties themselves must make the modifications and give them to the court. Nothing in R.C. 3109.04(D)(1) authorizes a trial court to craft its own original shared-parenting plan or to modify an original plan submitted by the parties. This court recognized in *Koller* that R.C. 3109.04(D)(1) "does not allow a court to create its own shared parenting plan" and that it must issue a plan submitted by one or both of the parties. *Koller* at ¶ 26. Likewise, in *Schattschneider* the Third District recognized that the statute does not permit a trial court to craft its own shared-parenting plan. It can only voice its objections to a proposed plan, ask for modifications, and deny approval if not satisfied. *Schattschneider* at ¶ 6-7.

{¶ 9} Notably, however, R.C. 3109.04(D)(1) appears to address a shared-parenting plan created in connection with an initial allocation of parental rights. Elizabeth correctly points out that another provision, R.C. 3109.04(E)(2)(b), authorizes a trial court to make its own modifications to the terms of an existing shared-parenting plan at any time. It may do so on its own motion or at the request of either party as long as the modifications are in the best interest of the children. *See Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 11 (recognizing that "[o]nce a shared-parenting decree has issued, R.C. 3109.04(E) governs modification of the decree").

{¶ 10} In his reply brief, Eric acknowledges that R.C. 3109.04(E)(2)(b) authorizes a trial court to make its own modifications to the terms of a shared-parenting plan. Despite that concession, he contends the trial court erred in doing so here. Even if R.C. 3109.04(E)(2)(b) applied, Eric argues in both his opening brief and his reply that the trial court failed to address or even cite any statutory best-interest factors. Therefore, he contends the trial court could not proceed under R.C. 3109.04(E)(2)(b).

{¶ 11} Eric also suggests that R.C. 3109.04(E)(2)(b) applies only when a trial court modifies "a few select provisions" of a shared-parenting plan. (Appellant's reply brief at 5.) In light of the substantial changes the trial court made here, Eric appears to argue that it was obligated to proceed under R.C. 3109.04(E)(1)(a), not R.C. 3109.04(E)(2)(b), if it wanted to make its own modifications to the parties' shared-parenting plan. Eric notes that R.C. 3109.04(E)(1)(a) imposes more stringent standards for making modifications, including a requirement of a change in circumstances.

{¶ 12} In *Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, the Ohio Supreme Court analyzed and discussed R.C. 3109.04(E)(1)(a) and R.C. 3109.04(E)(2)(b) in the context of a shared-parenting plan. Section 3109.04(E)(1)(a) provides:

> The court shall not modify *a prior decree allocating parental rights and responsibilities* for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these

standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

(Emphasis added.)

{¶ 13} Section 3109.04(E)(2)(b) provides:

In addition to a modification authorized under division (E)(1) of this section:

* * *

(b) The court may modify *the terms of the plan for shared parenting* approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest

of the children.

(Emphasis added.)

{¶ 14} In *Fisher*, the Ohio Supreme Court recognized that R.C. 3109.04(E)(1)(a) applies when a trial court modifies a *prior decree* allocating parental rights and responsibilities and designating a residential parent and legal custodian. On the other hand, R.C. 3109.04(E)(2)(b) applies when a trial court modifies *the terms of a prior shared-parenting plan* that has been incorporated into a prior decree. We followed *Fisher* in *Gessner v. Gessner*, 2d Dist. Miami No. 2017-CA-6, 2017-Ohio-7514, and noted that parenting time, child support, and the designation of residential parent for school purposes have all been held to be terms of a shared parenting plan that only require a "best interest" evaluation for modification. *Id.* at ¶ 35. Moreover, under R.C. 3109.04(G), a shared parenting plan may include provisions relevant to the care of a child, such as the child's living arrangements, medical care, and school placement. We contrasted these modifiable terms of a shared parenting plan, which require only a best interest analysis, with changing a designation of the residential parent and legal custodian in a decree, which requires a change of circumstances. *Id.*

{¶ 15} The *Fisher* majority explained that "the residential parent and legal custodian is the person with the primary allocation of parental rights and responsibilities. When a court designates a residential parent and legal custodian, the court is allocating parental rights and responsibilities." *Fisher* at ¶ 23. "A court also allocates parental rights and responsibilities when it issues a shared-parenting order. R.C. 3109.04(A)(2). A court may allocate parental rights and responsibilities for the care of a child to both parents and issue a shared-parenting order requiring the parents to share all or some of the aspects

of the physical and legal care of the child in accordance with the approved plan for shared parenting." *Id.* at ¶ 24. "If a shared-parenting order is issued and the order is silent regarding the residential parent and legal custodian status, and the context does not clearly require otherwise, then each parent is a residential parent and legal custodian of the child[.]" *Id.* at ¶ 25, citing R.C. 3109.04(K)(6). "In summary, R.C. 3109.04(E)(1)(a) expressly provides for the modification of parental rights and responsibilities in a decree. An allocation of parental rights and responsibilities is a designation of the residential parent and legal custodian. Therefore, R.C. 3109.04(E)(1)(a) controls when a court modifies an order designating the residential parent and legal custodian." *Id.* at ¶ 26. "While the designation of residential parent and legal custodian can be modified under R.C. 3109.04(E)(1)(a), that designation cannot be modified under R.C. 3109.04(E)(2)(b), which allows only for the modification of the terms of a shared-parenting plan." *Id.* at ¶ 27.

{¶ 16} The *Fisher* court elaborated on the differences between R.C. 3109.04(E)(1)(a) and R.C. 3109.04(E)(2)(b) as follows:

> * * * Within the custody statute, a "plan" is statutorily different from a "decree" or an "order." A shared-parenting order is issued by a court when it allocates the parental rights and responsibilities for a child. R.C. 3109.04(A)(2). Similarly, a shared-parenting decree grants the parents shared parenting of a child. R.C. 3109.04(D)(1)(d). An order or decree is used by a court to grant parental rights and responsibilities to a parent or parents and to designate the parent or parents as residential parent and legal custodian.
>
> However, a plan includes provisions relevant to the care of a child,

such as the child's living arrangements, medical care, and school placement. R.C. 3109.04(G). A plan details the implementation of the court's shared-parenting order. For example, a shared-parenting plan must list the holidays on which each parent is responsible for the child and include the amount a parent owes for child support.

A plan is not used by a court to designate the residential parent or legal custodian; that designation is made by the court in an order or decree. Therefore, the designation of residential parent or legal custodian cannot be a term of shared-parenting plan, and thus cannot be modified pursuant to R.C. 3109.04(E)(2)(b).

Finally, we note that R.C. 3109.04(E)(1)(a) and 3109.04(E)(2)(b) contain significantly different standards for modifications. "It is a well-settled rule of statutory interpretation that statutory provisions be construed together and the Revised Code be read as an interrelated body of law." *State v. Moaning* (1996), 76 Ohio St.3d 126, 128, 666 N.E.2d 1115, quoting *Wooster Republican Printing Co. v. Wooster* (1978), 56 Ohio St.2d 126, 132, 10 O.O.3d 312, 383 N.E.2d 124. To read both sections, with different standards, to apply to a court's analysis modifying the decree modifying a child's residential parent and legal custodian would create inconsistency in the statute. Two different standards cannot be applied to the same situation.

Modification of a prior decree, pursuant to R.C. 3109.04(E)(1)(a), may only be made "based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a

change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to shared parenting decree, and that the modification is necessary to serve the best interest of the child." This is a high standard, as a "change" must have occurred in the life of the child or the parent before the court will consider whether the current designation of residential parent and legal custodian should be altered. Conversely, R.C. 3109.04(E)(2)(b) requires only that the modification of the shared-parenting plan be in the best interest of the child.

The requirement that a parent seeking modification of a prior decree allocating parental rights and responsibilities show a change of circumstances is purposeful: " 'The clear intent of [R.C. 3109.04(E)(1)(a)] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the child a "better" environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.' " *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, quoting *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416, 3 OBR 479, 445 N.E.2d 1153.

Further, "[t]he General Assembly is the policy-making body in our state and has restricted the exercise of judicial authority with respect to modification of a prior decree allocating parental rights and responsibilities. This legislation comports with our rationale regarding stability in the lives of

children as a desirable component of their emotional and physical development." *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, at ¶ 28. We note that another statute that addresses orders granting legal custody of a child sets forth the same standard for a modification. R.C. 2151.42(B) also requires a court to find that a "change has occurred in the circumstances of the child or the person who was granted legal custody" and that modification is in the best interest of the child before modifying an order granting legal custody. *See In re Brayden James* at ¶ 26.

The standard in R.C. 3109.04(E)(2)(b) for modification of a shared-parenting plan is lower because the factors contained in a shared-parenting plan are not as critical to the life of a child as the designation of the child's residential parent and legal custodian. The individual or individuals designated the residential parent and legal custodian of a child will have far greater influence over the child's life than decisions as to which school the child will attend or the physical location of the child during holidays. Further, factors such as the physical location of a child during a particular weekend or holiday or provisions of a child's medical care are more likely to require change over time than the status of the child's residential parent and legal custodian.

*Fisher,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 29-36.

{¶ 17} The foregoing analysis makes clear that whether the trial court was required to find a "change in circumstances," as Eric suggests, depended on (1) whether it modified

a prior decree allocating parental rights and responsibilities that designated a residential parent and legal custodian or (2) whether it only modified the parties' prior shared-parenting plan. If it did the latter, then R.C. 3109.04(E)(2)(b) applied and no change-in-circumstances finding was required.

**{¶ 18}** Although we agree with Eric that the trial court largely re-wrote the existing shared-parenting plan on the grounds that it was unworkable and that the parties had experienced a near-total breakdown in communication, the trial court did not modify or re-designate anyone as the residential parent and legal custodian. The parties' original shared-parenting plan was a 27-page document. The trial court described it as "over-drafted" and found that Eric had been "heavily involved" in its creation. (Doc. #124 at 2.) This original plan identified both parties as the "residential and custodial parent," distinguishing between them only as to whether they were "on duty" or "off duty" based on with whom the children were residing. (*See* Shared-parenting plan, attached to Doc. #59.) In its entry incorporating a revised shared-parenting plan, the trial court expressly declined to designate Eric or Elizabeth as the children's sole residential parent and legal custodian. The trial court explained that it was "leery about designating one parent the residential parent and legal custodian because neither parent has demonstrated an ability to be fair and objective in decision-making." (Doc. #124 at 3.) As a result, the trial court found a continuation of shared parenting to be in the children's best interest. A significant portion of the changes it made to the shared-parenting plan pertained to the parties' parenting-time schedule, which constituted a change to the terms of the prior plan, not a modification of the residential parent and legal custodian.

**{¶ 19}** Even assuming, contrary to our conclusion herein, that the trial court's

judgment did constitute a modification of the existing custodial status of the children, we would find the resulting change-in-circumstances requirement to be satisfied. Although the trial court did not expressly state that it had found a change in the circumstances of one or both parties, it did find that Eric and Elizabeth had experienced a "severe breakdown in communication" that had "significantly impacted their ability to parent effectively." (*Id.* at 2.) Case law establishes that a "breakdown in communication" between the parties may constitute a "change in circumstances" that justifies modifying a prior decree designating the residential parent and legal custodian. *See, e.g.*, *Wolford v. Willis*, 4th Dist. Gallia No. 17CA9, 2018-Ohio-3937, ¶ 26; *Williamson v. Williamson*, 2017-Ohio-1082, 87 N.E.3d 676, ¶ 30 (7th Dist.); *Reese v. Siwierka*, 11th Dist. Portage No. 2012-P-0053, 2013-Ohio-2830, ¶ 31; *Walsh-Stewart v. Stewart*, 9th Dist. Wayne No. 12CA0031, 2012-Ohio-5927, ¶ 16.

{¶ 20} Here the record reveals that the animosity and lack of communication between the parties was so severe that it undoubtedly constituted a change in circumstances since the adoption of the original shared-parenting plan. At one point during the hearing on the parties' motions, psychologist Barbara Bergman opined that the parties were incapable of having a "respectful discussion" about any subject. (Sept. 14, 2018 Tr. at 256.) She added that the parties "don't agree with each other on anything." (*Id.* at 266.) The trial court also observed that the parties were incapable of working out issues between themselves. (*Id.* at 311.) We harbor no doubt that the trial court's finding about a "severe breakdown in communication" between the parties constituted a finding of a "change in circumstances," assuming such a finding was required.[2]

---

[2] In addition to making a best-interest determination and finding a change in

{¶ 21} The only remaining issue raised by Eric's first assignment of error is whether the trial court correctly found that modification of the shared-parenting plan— rather than termination of shared parenting and an award of legal custody to him—was in the children's best interest. Eric references the factors listed in R.C. 3109.04(F)(2) and asserts that the trial court erroneously failed to cite or consider any of them. He contends those factors demonstrate that continued shared parenting is not in the children's best interest.

{¶ 22} Section 3109.04(F)(2) provides:

In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly,

circumstances, a trial court modifying the designation of the residential parent and legal custodian must make one more finding under R.C. 3109.04(E)(1)(a). As relevant here, the statute provides that the trial court "shall retain the residential parent designated by * * * the prior shared parenting decree unless" it finds that "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii). This language suggests that the trial court is relocating the child from one home to another, which did not occur here and which further supports our determination above that the trial court did not modify the existing shared custodial status of the children. But even if this requirement did apply, we safely can infer from the trial court's decision that it believed the shared-parenting plan changes it made were more advantageous than harmful to the children. Otherwise, it certainly would not have made the changes. In appropriate cases, this court and others have recognized that a trial court implicitly made a necessary finding under R.C. 3109.04. *See*, *e.g.*, *Ashbridge v. Berry*, 2d Dist. Greene No. 2009-CA-83, 2010-Ohio-2914, ¶ 6; *Lucas v. Lucas*, 3d Dist. Paulding No. 11-93-6, 1994 WL 95209, *2 (Mar. 25, 1994); *In re Wright*, 5th Dist. Stark No. 2002CA00184, 2003-Ohio-546, ¶ 27.

with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶ 23} On appeal, Eric addresses factors (a), (b), and (e) above. With regard to factor (a), he cites psychologist Bromberg's opinion that shared parenting is not a viable option because the parties cannot get along. He also cites psychologist Bergman's report, which indicated that shared parenting was not viable, and the guardian ad litem's report, which recommended that he be designated the legal custodian. In addition, he points out the trial court's observation in its judgment entry that the parties have not been able to communicate or reach agreement on parenting decisions. In light of this evidence, Eric questions how the trial court could have found continued shared parenting viable.

{¶ 24} With regard to factor (b), Eric contends he always has sought to encourage love, affection, and contact between Elizabeth and the children. As evidence, he cites his initial willingness to enter into a shared-parenting plan. He also cites his testimony about trying to make accommodations for Elizabeth, showing respect for her around the children, and allowing her to have slightly more parenting days than him. Eric cites his new wife Kelly's testimony about him acting respectfully toward Elizabeth around the

children and trying to accommodate Elizabeth's wishes. Conversely, he cites testimony about Elizabeth once placing the children with a babysitter instead of letting him see them and speaking disrespectfully about him in front of the children.

**{¶ 25}** With regard to factor (e), Eric notes the guardian ad litem's recommendation that shared parenting be terminated and that he be designated the residential parent and legal custodian.

**{¶ 26}** In addition to addressing the R.C. 3109.04(F)(2) factors, Eric claims the trial court erred in relying on a lack of cooperation as a factor *supporting* shared parenting. Specifically, he cites the trial court's statement that it was "leery about designating one parent the residential parent and legal custodian because neither parent has demonstrated an ability to be fair and objective in decision-making." (Doc. #124 at 3.) Based on the premise that the trial court erred in not terminating shared parenting, Eric proceeds to argue that the custody factors in R.C. 3109.04(F)(1) favor designating him the residential parent and legal custodian.

**{¶ 27}** We review the trial court's modification of the parties' shared-parenting plan under R.C. 3109.04(E)(2)(b) for an abuse of discretion. *Thompson v. Thompson*, 5th Dist. Stark No. 2012CA00176, 2013-Ohio-2587, ¶ 19, citing *Picciano v. Lowers*, 4th Dist. Washington No. 08CA38, 2009-Ohio-3780, ¶ 25. The phrase "abuse of discretion" implies an unreasonable, arbitrary, or unconscionable attitude. *Chelman v. Chelman*, 2d Dist. Greene No. 2007 CA 79, 2008-Ohio-4634, ¶ 17. An unreasonable decision is one that is not supported by a sound reasoning process. *Id.*

**{¶ 28}** Although R.C. 3109.04 identifies various factors for a trial court to "consider" when exercising its discretion and making a best-interest determination, the trial court

was not obligated to recite or discuss any factors individually. *See*, *e.g.*, *Hutchinson v. Hutchinson*, 2d Dist. Montgomery No. 26221, 2014-Ohio-4604, ¶ 32. The critical issue is whether the record supports the trial court's conclusions and whether it explained its best-interest determination sufficiently. *Id.* at ¶ 33-36 (finding that the record supported the trial court's explanation for its best-interest determination despite its failure to discuss each best-interest factor by name); *Doane v. Doane*, 5th Dist. Guernsey No. 00CA21, 2001 WL 474267, *6 (May 2, 2001) (noting that R.C. 3109.04(F)(2) "does not require the court to make independent findings on each of the * * * factors" and that "a silent record raises the presumption that a trial court considered the factors").

{¶ 29} Here the trial court found that continuing shared parenting was in the best interest of the parties' children. In reaching this conclusion, it noted that it had considered, among other things, the recommendation in the guardian ad litem's report, which was a best-interest factor under R.C. 3109.04(F)(2)(e). (Doc.#124 at 11.) The trial court also heard two days of testimony largely addressing the parties' ability to cooperate and make joint decisions and their ability to encourage love, affection, and contact between the children and the other parent, which are best-interest factors under R.C. 3109.04(F)(2)(a) and (b). In short, this testimony established that the parties had engaged in mutual power struggles, bickering, and petty disputes that had led to numerous contempt allegations against one another.

{¶ 30} Although uncooperativeness and incompatibility typically would militate against shared parenting, we cannot say the trial court failed to engage in a sound reasoning process when it continued shared parenting. The trial court found both parties at fault for a "breakdown in communication" that "significantly impacted their ability to

parent effectively." (Doc. #124 at 2.) After hearing their testimony, considering their demeanor, and assessing their credibility, the trial court did not trust either party enough to be designated the children's sole residential parent and legal custodian. It noted that neither party had shown an ability to be fair or objective. (*Id.* at 3.) Therefore, it feared placing too much power and control in either party's hands by granting either parent legal custody. That being so, the only other option was to continue shared parenting under modified terms that the trial court drafted and included in its judgment entry. The trial court reasonably could have believed that the simplified terms in its shared-parenting plan would lead to less conflict and might prevent the plan from being "used as a weapon rather than a guide," as it found the prior plan had been. (*Id.* at 2.) Based on the record before us, we see no abuse of discretion in the trial court's decision to continue shared parenting under the terms of a modified shared-parenting plan. In light of that determination, it necessarily follows that the trial court did not err in denying Eric's motion to be designated the children's residential parent and legal custodian. The first assignment of error is overruled.

{¶ 31} In his second assignment of error, Eric contends the trial court erred in ordering alternating-week parenting time contrary to the unanimous opinion of all witnesses and the trial court's own assessment that such an order was not in the children's best interest.

{¶ 32} Eric notes that the parties' original shared-parenting plan provided for the parenting-time schedule to adjust monthly based on his work schedule as a commercial airline pilot. He contends the monthly schedule was never identified as a source of conflict during the hearing. He argues that the problem was Elizabeth wanting to change it after

it had been set. He also points out that the guardian ad litem recommended that he continue to provide his schedule one month in advance so parenting time could be set. In addition, psychologist Bromberg described the existing parenting time schedule as "decent" and did not know whether it should be changed. For her part, psychologist Bergman recommended continuing a schedule that maintained the children's contact with both parents. Bergman noted that parenting time could not be equal if Eric were unavailable due to work. Eric also cites Elizabeth's testimony that she was willing to accommodate his flying schedule and to have him make an equal parenting-time schedule. (Sept. 14, 2018 Tr. at 143.) Finally, Eric points to a portion of the following remarks by the trial court during the evidentiary hearing:

Judge Hurley: There's no fault here. Let's move on. It's, it's blatantly obvious these parties can't agree on what time that clock says it is right up there (Indicating), so I'm, I've, that point has been made yesterday at 10:00 an hour after we started.

So I—we're going to quit here in a minute. *I think I really want the parties to understand where we're going here is you're going to probably get a specific schedule of time for the children without any ability of either of you to modify it involving the other one because you can't talk.*

*That's the worst situation ever for your children, but you aren't giving me any choice,* neither one of you, so that's where you're putting us by sitting there doing what you've been doing for the last day and a half.

And if that's what you want to do with your children, that's where we're going. I don't have any choice. Because—and you're going to have

what we call curbside exchanges. You're not going to meet face-to-face. That's where you're going.

And it's all because the two of you can't get past whatever anger was involved in your original divorce, and you're leaving me no choice * * *.

(Emphasis added.) (Sept. 14, 2018 Tr. at 222-223.)

{¶ 33} Eric contends the italicized portion of the foregoing remarks demonstrates that even the trial court recognized that the parenting time it ordered in the modified shared-parenting plan was not in the children's best interest.

{¶ 34} Upon review, we see no abuse of discretion in the trial court's decision to order fixed, alternating-week parenting time. Although Elizabeth was willing to try to accommodate Eric's schedule, she also testified that she in fact wanted "[w]eek to week" parenting time. (Sept. 14, 2018 Tr. at 143.) According to Elizabeth, one problem with the prior schedule was that Eric set it each month to suit him and often made little effort to accommodate her requests for changes when special events occurred. Allowing Eric to create a new parenting-time schedule each month made it difficult for her to plan ahead for events involving the children, and his unwillingness or inability to make modifications to the schedule was a source of conflict. (*See*, *e.g.*, *id.* at 176-177, 207-208.) The trial court acted reasonably by trying to minimize this conflict through a more traditional, alternating week parenting-time schedule. We note too that Eric does have some control over his flight schedule, and his ability to control his schedule will increase as his seniority rises.

{¶ 35} Finally, we disagree with Eric about the trial court's alleged acknowledgment that its own parenting-time schedule was not in the children's best interest. In the passage

quoted above, the trial court explained that the parties' inability to communicate compelled it to implement a more traditional, fixed schedule to minimize conflict. The parties' hostility toward one another, which limited the trial court's options, appears to be what the trial court characterized as "the worst situation" for the children. We do not believe the trial court meant to suggest that its own alternating-week schedule was not in the children's best interest. To the contrary, the trial court reasonably concluded that the schedule it created was in the best interest of the children insofar as it reduced conflicts between Eric and Elizabeth. In its judgment entry, the trial court explained:

> * * * And though the Court applauds the parties' attempts to have equal parenting time tailored to Father's unusual work schedule, the current parenting time schedule has led to too much conflict, which is not in the children's best interest. The Court finds this to be due, in large part, to the fact that Father has control over making the parenting time schedule on a monthly basis and has demonstrated an unwillingness to accommodate even the most reasonable of Mother's requests for changes or additional time.

(Doc. #124 at 2-3.)

{¶ 36} Although Eric disputes being unwilling to cooperate with Elizabeth and cites some examples of accommodation, the trial court did not abuse its discretion in reaching the conclusion that it did. The second assignment of error is overruled.

{¶ 37} In his third assignment of error, Eric contends the trial court "erred by dismissing the evaluations of both expert witnesses and the GAL without evaluating them."

{¶ 38} Eric first contests the trial court's finding that "the opinions rendered by Drs. Bergman and Bromberg essentially cancelled each other out as they were both equally competent but offered competing recommendations." (*Id.* at 11.) He argues that the two experts' opinions were "entirely harmonious" and that there was no "substantial conflict."

{¶ 39} Eric also challenges the trial court's discounting of opinions set forth in the guardian ad litem's report. Specifically, he complains about the trial court's observation that the guardian ad litem "was not present [at the hearing] to observe the testimony and demeanor of the parties throughout the proceedings, both of which significantly influenced the decision of the Court." (*Id.*) Eric suggests that the trial court exaggerated the significance of the parties' demeanor so it could do whatever it wanted while insulating its ruling from reversal on appeal. Eric also claims he was unaware that the guardian ad litem's absence from trial would create a problem or negate the weight and credibility of the guardian's written report and recommendations.

{¶ 40} Upon review, we find Eric's arguments to be unpersuasive. The trial court's short-hand reference, at the end of its shared-parenting analysis, to the experts' opinions cancelling each other out fails to persuade us that it improperly dismissed their evaluations. The essence of Bromberg's opinion was that Eric should be designated the residential parent and legal custodian. He based this custody determination largely on (1) his belief that Eric would be "firmer" with the children and less subject to manipulation and (2) certain "mood" and "anger" issues that he perceived when evaluating Elizabeth's Rorschach test. (Sept. 13, 2018 Tr. at 50-52.) Bromberg also opined that the monthly parenting-time schedule should remain essentially the same. (*Id.* at 45-46, 50-53.) For her part, Bergman testified that neither party had "any difficulties handling the children[.]"

(Sept. 14, 2018 Tr. at 242.) Bergman did not recommend either parent to be named the sole residential parent and legal custodian. She believed, however, that Elizabeth likely would be "marginalized" if Eric were designated the residential parent and legal custodian.[3] (*Id.* at 244.) Although Bergman's views on the key issue of legal custody may not directly "conflict" with Bromberg's, they fairly may be characterized as "competing recommendations," which is what the trial court stated. Her concerns about Eric's potentially marginalizing Elizabeth and her refusal to recommend him as the residential parent and legal custodian were not "entirely harmonious" with Bromberg's opinions.

**{¶ 41}** Finally, we see no error in the trial court's treatment and consideration of the guardian ad litem's report. In its ruling, the trial court addressed the report as follows:

* * * The Court also reviewed the report issued by the Guardian ad Litem and carefully considered his recommendations given his expertise and familiarity with the parties and the case. However, because the guardian ad litem was not called as a witness, he was excused from the courtroom at the beginning of day 1 of trial and was not present to observe the testimony and demeanor of the parties throughout the proceedings, both of which significantly influenced the decision of the Court.

(Doc. #124 at 11.)

**{¶ 42}** Contrary to Eric's argument, we have no basis for concluding that the trial court exaggerated the significance of the parties' demeanor when assessing their

---

[3] Parenthetically, Bergman also recognized the possibility that Elizabeth might try to "marginalize" Eric if she were the sole residential parent and legal custodian. (Sept. 14, 2018 Tr. at 244.) For present purposes, however, that possibility has no bearing on whether Bromberg and Bergman offered "competing recommendations" as to Eric's obtaining legal custody.

credibility to insulate itself from reversal. Unfortunately, we lack the ability to see and hear witnesses ourselves. As the factfinder who observes the witnesses, the trial court is particularly well suited to assess credibility based in part on their demeanor, and we necessarily give substantial deference to its determinations. *In re J.G.*, 2d Dist. Montgomery No. 20074, 2004-Ohio-774, ¶ 67.

**{¶ 43}** As for the guardian ad litem's physical absence from the hearing, the trial court bears no responsibility for it. At the outset of the hearing, the trial court allowed guardian ad litem David Mesaros to depart after the following exchange in the presence of both parties' counsel:

> MR. MESAROS: I understand from Counsel that I am not going to be required to testify by either side. I submitted a supplemental report to the Court in April.
>
> In June, Mother sent me an additional list of people she wanted me to speak with. I did not, I have not spoken to anyone or worked with anyone since the report it April.
>
> JUDGE HURLEY: Okay.
>
> MR. MESAROS: So with that, unless Counsel have changed their mind, I was going to depart, because I don't believe there's anything I need to contribute at the moment.
>
> JUDGE HURLEY: So you're, you would choose not to stay and participate in any of the examination of any of the witnesses?
>
> MR. MESAROS: Correct. I have read the psychological—
>
> JUDGE HURLEY: That's your option—

MR. MESAROS: I have read the psychological reports by both sides, and I don't have anything else I wish to pursue.

JUDGE HURLEY: Is Mr. Mesaros correct, that neither one of you intend on calling him, ask him questions about his report?

MR. WHIPPS: That's correct, your Honor. I believe—

JUDGE HURLEY: All right.

MR. WHIPPS: —both of us have told him even this morning that we don't intend to do that.

JUDGE HURLEY: All right.

(Sept. 13, 2018 Tr. at 15-17.)

{¶ 44} The foregoing exchange reflects that the guardian ad litem asked to leave the hearing, neither party's counsel objected, and the trial court granted the request. In hindsight, it may have been better from Eric's perspective for the guardian ad litem to have remained. The trial court did nothing erroneous, however, with respect to the guardian ad litem's absence. The third assignment of error is overruled.

{¶ 45} Based on the reasoning set forth above, we affirm the judgment of the Greene County Common Pleas Court, Domestic Relations Division.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies sent to:

Michael A. Hochwalt
Edward F. Whipps
John C. Ruiz-Bueno, III

David P. Mesaros, GAL
Hon. Steven L. Hurley