[Cite as *In re E.M.*, 2025-Ohio-1810.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: E.M. | : | |
| | : | |
| | : | C.A. No. 2025-CA-5 |
| | : | |
| | : | Trial Court Case No. 21630305 |
| | : | |
| | : | (Appeal from Common Pleas Court-Juvenile Division) |
| | : | |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 21, 2025

. . . . . . . . . . .

JEREMY M. TOMB, Attorney for Appellant

APRIL H. MOORE, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Appellant-Father appeals from a judgment of the Miami County Court of Common Pleas, Juvenile Division, which denied his motion to terminate or modify a shared parenting plan for his daughter. For the reasons that follow, the judgment of the trial court will be affirmed.

**I.      Facts and Procedural History**

{¶ 2} E.M. was born to Mother and Father in May 2014. The parents were never married, and they ended their relationship shortly after their daughter was born. Two years later, litigation between the parties began when Father filed a motion to establish parental rights and responsibilities and a motion for temporary and "permanent" custody.

{¶ 3} The parents have been subject to a shared parenting plan since 2017 in which Mother is the residential parent for purposes of school enrollment.

{¶ 4} On April 11, 2024, Father filed a motion to terminate the shared parenting plan and a "motion for temporary and permanent custody or in the alternative, modify parental rights and responsibilities and designate Father as residential parent." He wanted to decide where E.M. went to school and claimed that she was falling behind in reading at her current school. He argued that E.M. would fare better in his district of choice.

{¶ 5} A hearing was conducted before a magistrate on July 19 and 22, 2024. The magistrate heard from three central witnesses: Father, his wife ("Wife"), and the guardian ad litem (GAL). Mother and her husband ("Husband") did not testify. The court also considered several exhibits, including the GAL's report. Neither party asked the magistrate to make findings of facts or conclusions of law under Juv.R. 40(D)(3)(a)(ii).

{¶ 6} The magistrate issued a decision a few weeks later. After considering the requisite factors, it found that terminating the shared parenting plan was not in the child's best interest and neither was naming Father the residential parent for school placement purposes. Thus, it overruled Father's motion and maintained the shared parenting plan, but it added additional requirements relating to E.M.'s academics, extracurriculars, and

medical care. On August 20, 2024, Father filed objections to the magistrate's decision. He objected to: (1) the court's denial of his motion for custody; (2) the court's findings relative to the R.C. 3109.051 and R.C. 3109.04 factors; and (3) the court's findings relative to naming him residential parent for school placement purposes. He claimed that the magistrate's conclusions were against the manifest weight of the evidence.

{¶ 7} On October 28, 2024, Father filed supplemental objections. As pertinent to this appeal, he argued that the court's "findings relative to R.C. 3109.051 and R.C. 3109.04 factors as applied to the evidence and parties' testimony presented in this matter and not designating Father as the Residential Parent for school purposes is against the manifest weight of the evidence[.]"

{¶ 8} The trial court overruled Father's objections; it agreed with the magistrate that, based on trial testimony and evidence presented at the proceeding, Father had not shown a change of circumstance needed for the court to modify the shared parenting plan and had not established that it was in the best interest of E.M. to terminate the current plan and name him residential parent and legal custodian.

{¶ 9} Father appeals from the court's December 26, 2024 entry, raising a single assignment of error.

## II.    Custody Determinations

{¶ 10} In his assignment of error, Father argues that the "trial court abused its discretion in finding there was no change in circumstances and in applying the R.C. 3109.04 factors in determining the best interests of the child." We understand that to mean that he disagrees with the trial court's decision to neither terminate nor modify the shared

parenting *plan*. However, the legal analysis used by both the trial court and Father appears to be that of modifying a *decree*. Either analysis leads to the same conclusion (and we will look at both), but shared-parenting *decrees* and *plans* are separate legal instruments.

{¶ 11} A shared-parenting decree and a shared-parenting plan are distinct legal instruments under Ohio law, serving different purposes in the context of child custody arrangements. A shared-parenting decree is a court order that grants parents shared parenting rights and responsibilities for their child, while a shared-parenting plan details the implementation of that decree, including specific instructions relating to the child's care. *See Palichat v. Palichat*, 2019-Ohio-1379, ¶ 16 (2d Dist.).

{¶ 12} R.C. 3109.04 sets forth the procedures to be followed if either a parent or the trial court finds it necessary to make changes to a shared-parenting decree or plan. The procedures differ depending on whether the trial court plans to modify a decree that allocates parental rights and responsibilities, modify the terms of an existing shared-parenting plan, or terminate a shared-parenting decree and plan. *Bruns v. Green*, 2020-Ohio-4787, ¶ 9.

{¶ 13} According to R.C. 3109.04(E)(1)(a), a trial court can modify a ***decree*** that allocates parental rights and responsibilities, including a shared-parenting decree, if it finds that (1) a change has occurred in the circumstances of the child, the residential parent, or either of the parents subject to a shared parenting decree; and (2) the modification is necessary to serve the best interest of the child. *Bruns* at ¶ 10.

{¶ 14} On the other hand, R.C. 3109.04(E)(2)(a) and (b) allow for the modification

of the terms of a ***shared-parenting plan***. It can be done if both parents jointly agree on certain modifications, unless the court determines they are not in the best interest of the child (R.C. 3109.04(E)(2)(a)), or if the court, on its own or at the request of one or both parents, finds that modification of the terms of the shared-parenting plan is in the best interest of the child (R.C. 3109.04(E)(2)(b)).

{¶ 15} Under R.C. 3109.04(E)(2)(c), a court may terminate a prior final shared-parenting decree that includes a shared parenting plan upon the request of one or both parents or whenever it determines that shared parenting is not in the best interest of the child. "[A] trial court need consider only the best interest of the child when deciding whether to terminate a shared-parenting plan" and when it determines which parent to designate as the residential and custodial parent. *Bruns* at ¶ 1.

<u>Modification of a Decree</u>

{¶ 16} Father first argues that the trial court abused its discretion when it (1) did not find a change in circumstances and then (2) considered factors from R.C. 3109.04(F)(1). Based on this argument, we must presume that Father believes the trial court erred when it did not modify the shared-parenting decree. R.C. 3109.04(E)(1)(a).

{¶ 17} The first step in this analysis is to determine if there was a change in circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree. R.C. 3209.04(E)(1)(a). This is "to spare children from a constant tug of war, and to provide some stability to the custodial status of the children[.]" (Citations omitted.) *Hobbs v. Hobbs*, 2015-Ohio-1963, ¶ 54 (4th Dist.).

{¶ 18} While not defined by statute, the phrase "change of circumstances" has

been held to pertain to "an event, occurrence, or situation which has a material and adverse effect upon the child." (Citations omitted.) *In re I.E.*, 2020-Ohio-3477, ¶ 15 (2d Dist.). "A change of circumstances must be one of substance, not slight or inconsequential, to justify modifying a prior custody order." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997); *see also Wiram v. Wiram*, 2017-Ohio-7436, ¶ 5 (2d Dist.).

{¶ 19} "In determining whether a change of circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." *Davis* at paragraph two of the syllabus. Accordingly, we review that determination for an abuse of discretion. *In re I.E.* at ¶ 17. The trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 20} Father contends that the change in circumstances was E.M.'s decline in reading proficiency and comprehension at the school in which Mother had enrolled her. We first note that there was no evidence that there had been a decline in E.M.'s reading abilities. Father testified that E.M.'s third grade teacher told him after Christmas break that she was having difficulty with the third-grade proficiency test, but he presented nothing from the child's teacher, school, or any expert that showed any struggles, let alone decline. In fact, the record showed the opposite – that her reading level had improved throughout the school year.

{¶ 21} The record includes the results of three I-Ready tests (a standardized reading test) taken in the 2023-2024 school year. The first, taken in September 2023, showed a diagnostic score of 513 and a Lexile reading measure of 620L. (A Lexile number

is a measure of a reader's reading ability and difficulty of a text. It helps match readers with texts that are appropriate for their reading level.) The January 2024 results indicated a diagnostic score of 524 and a Lexile measure of 670L. The May 2024 test showed a 533 score and 710L Lexile measure. E.M.'s reading results improved as the school year progressed, not the opposite, as Father suggests.

{¶ 22} Even if the argument were that E.M. was struggling with her reading, if there was a change, it was a positive one. Father testified that E.M. was placed in the Title I reading program (a federally funded program to provide reading support to struggling students) after the school noticed some reading difficulties. He also admitted, though, that she passed the third grade reading test and was then transitioned out of the program. Trial Tr. at 178.

{¶ 23} After considering the record before us, we agree with the trial court's conclusion that there had not been a change in circumstances for purposes of R.C. 3109.04(E). Therefore, we do not reach the best interest analysis here. *Hobbs*, 2015-Ohio-1963, ¶ 53 (4th Dist.) ("[T]he threshold question in a parental rights and responsibilities modification case is whether a change in circumstances has occurred."); *Wilburn v. Wilburn,* 144 Ohio App.3d 279, 287 (2d Dist. 2001) (the finding of a change in circumstances should be made prior to weighing the best interest of the child). The trial court did not abuse its discretion when it overruled Father's request to modify the shared-parenting decree.

Termination or Modification of Shared-Parenting Plan

{¶ 24} "A trial court need consider only the best interest of the child when deciding

whether to terminate a shared-parenting plan." *Bruns*, 2020-Ohio-4787, at ¶ 1. The same is true for modification. R.C. 3109.04(E)(2)(b). To reach that determination, the legislature has provided factors for the court to consider, including:

(a) The wishes of the child's parents regarding the child's care;

(b) The wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to home, school, and community;

(e) The mental and physical health of all persons involved;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make support payments;

(h) Whether either parent has been convicted of a criminal offense involving an act that resulted in a child being labeled an abused or neglected child; whether either parent or household member has been convicted of a sexually oriented offense involving a victim who was a member of the household that is subject to this proceeding; whether the parent or household member has been convicted of an offense of violence against a household member;

(i) Whether the residential parent has continuously and willfully denied the other parent's right to parenting time;

(j) Whether either parent has established, or plans to establish a residence

outside the state.

R.C. 3109.04(F)(1)(a)-(j). The court also must consider:

(a) The ability of the parents to cooperate and make decisions jointly;

(b) The ability of each parent to encourage the sharing of love, and contact between the child and the other parent;

(c) Any history of, or potential for child or spousal abuse, domestic violence, or parental kidnapping by either parent;

(d) The proximity of the parents to each other;

(e) The recommendation of the guardian ad litem.

R.C. 3109.04(F)(2)(a)-(e).

{¶ 25} The magistrate did not explain in writing how it had considered the factors when it denied Father's motion(s), but because neither party asked for findings of fact and conclusions of law, it was not required to do so. Juv.R. 40(D)(3)(a)(ii). The magistrate did note, however, that it "considered all the factors in §3109.04(F)(1) and (F)(2) . . . [and] finds that [t]erminating the Shared Parenting Plan is not in the child's best interest." It further declined to name Father as residential parent for school placement purposes because, the magistrate reasoned, it was not in E.M.'s best interest.

{¶ 26} The trial court did address specific factors in its decision. For instance, regarding R.C. 3109.04(F)(1)(a), it found that even though Mother and Father struggle to interact with each other in a meaningful way, E.M. still thrives. As to (b), the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent, the court believed that while the parents struggled, re-entering counseling

would help. The court considered (c), any history of abuse or domestic violence, and found none. It also found, when, considering (d) – the geographic proximity of the parents – that Mother and Father lived in close proximity. Finally, the trial court considered the recommendation of the GAL, R.C. 3109.04(F)(1)(c), and noted that the GAL, who had many years of experience, recommended that the shared parenting plan *not* be changed. Accordingly, we cannot say the court abused its discretion.

{¶ 27} There are other R.C. 3109.04(F)(1) factors that could be found in favor of the court's decision, including (a) and (b), which deal with the wishes of the child. Both the GAL and the magistrate interviewed E.M., and she told them that while there were issues at both parents' houses (especially at Father's house – she reported that Father and Wife fought a lot and that Wife once punched Father), she loved each one and had meaningful relationships at both places. Ultimately, she wanted the custody situation to stay the same and she wanted to stay enrolled at her current school. The fact that E.M. had close relationships at both houses, was doing well in school (the evidence, despite Father's contention otherwise, was that E.M. was reading at grade level, no longer needed Title I reading help, and was receiving As on her report card), and was active in extracurriculars set up by both parents (factors (c) and (d)) also militated against Father's motions.

{¶ 28} Not all the factors disfavored Father's motions, however. R.C. 3109.04(F)(1)(f) and (i), which relate to making sure the child has the court-ordered parenting time with the other parent, seem to favor Father, as the record indicates that at one point, he was given 400 hours of make-up parenting time.

**{¶ 29}** After considering the record before us, we must conclude that the trial court did not abuse its discretion when it denied Father's motion to terminate or modify the shared-parenting plan. We would reach the same conclusion as to a request to modify the decree. The assignment of error is overruled.

### III.	Conclusion

**{¶ 30}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . .

LEWIS, J. and HANSEMAN, J., concur.