DECISION AND JUDGMENT ENTRY
{¶ 1} Jodi Cowan ("Mother") appeals the judgment of the Washington County Court of Common Pleas granting Marvin Cowan ("Father") custody of the parties' minor son, Corey. Mother argues that the court abused its discretion and misstated the facts adduced at trial, leading it to the erroneous conclusion that Father should be designated as Corey's residential parent and legal custodian. Because we find that the court's unfounded belief that mother was content to let Corey live with Father as long as he continued to pay child support colored the court's perception of the other evidence in this case, we agree.
 I. {¶ 2} The parties married on November 11, 1989, and three children were born as issue of the marriage — Corey (DOB: April 27, 1990); Cameron (DOB: September 9, 1992); and Chase (DOB: May 29, 1997). The Washington County Court of Common Pleas granted Mother a divorce by a journal entry dated October 18, 2000. The final entry in divorce named Mother as the residential parent and legal custodian of the three minor children, and granted Father standard visitation.
 {¶ 3} In August 2002, the parties' eldest son, Corey, went to live with Father. Corey remained with Father until sometime before the beginning of the 2003-2004 school year, when he returned to live with Mother. On July 24, 2003, Father moved the court for a modification of parental rights/custody granting custody of Corey to Father. The court conducted a hearing upon the motion on November 5, 2003, as well as an in camera interview with Corey.
 {¶ 4} Thereafter, the court issued a "Decision (With Findings of Fact and Conclusions of Law)" on November 26, 2003. Much of the court's decision consists of a recitation of the testimony adduced at trial. "A mere recital of the evidence presented is not a finding of fact." Freeman v. Westland Builders, Inc.
(1981), 2 Ohio App.3d 212, 214, citing Albright v. Hawk (1895),52 Ohio St. 362; Manchester v. Cleveland Trust Co. (1953),95 Ohio App. 201; McShane v. Keiser (1958), 108 Ohio App. 514. Therefore, we do not interpret the court's recitation of testimony as findings here.
 {¶ 5} In its decision, the court found that during the year Corey resided with Father, he became integrated into Father's home and "vastly improved his academic standing." Relying upon Father's testimony, the court concluded that Corey raised his grades "from Ds and Fs to a B average" while residing with Father. Although the court noted the improvement in Corey's grades, it also found that "[Corey] did get in with the wrong crowd and was found to have marijuana on him. Corey maintains that he ate the marijuana rather than smoked it." The court also found that "appropriate steps have been taken to keep these children away from Corey and Corey away from these children." The court found that Corey needed structure, love and affection, and the cooperation of both of his parents.
 {¶ 6} The court noted that Father testified he was in prison in 1989 for Vehicular Homicide, and served a probation violation for receiving stolen property. Additionally, Father pled guilty to a phone harassment charge brought against him by Mother's current husband. In 2003, Father spent approximately seven weekends in jail as a result of his plea.
 {¶ 7} After interviewing Corey, the court found that Corey blames his stepfather for having put Father in jail, and as a result, "it will be difficult for [stepfather] and Corey to have a relationship in the future." On two separate occasions within its decision, the court specifically found that Mother did not object to Corey living with his Father until Father took steps to stop paying child support for Corey.
 {¶ 8} On January 6, 2003, the court entered a judgment, incorporating its November 26, 2003 decision, naming Father as Corey's residential parent and legal custodian, and granting Mother liberal visitation with Corey.
 {¶ 9} Mother appeals, raising the following assignment of error: "The Trial Court Abused Its Discretion and Misstated the Facts At Trial In Leading to The Conclusion That Marvin Cowan Should Be Designated Residential Parent and Legal Custodian of his son Corey."
 II. {¶ 10} In her sole assignment of error, Mother contends that the court abused its discretion by naming Father as Corey's residential parent and legal custodian. Mother claims that the court made certain factual findings that are entirely unsupported by the record. Specifically, Mother argues that the court erred in making the following findings of fact: (1) that Corey's grades dramatically improved while he lived with his Father; (2) that Corey probably used marijuana; (3) that Father had turned his life around, given the fact that Father served seven weekends in jail in 2003 for "threatening to kill" Mother's current husband; (4) that Corey wrote a letter of apology to his step-father for getting in a motorcycle accident; and (5) that Mother did not oppose Corey residing with his father until he sought to terminate child support. Finally, Mother argues that the court erred in ignoring voluminous evidence that it was in Corey's best interest to remain in her custody.
 {¶ 11} In domestic relations matters, a trial court is vested with broad discretion to do what is equitable under the facts and circumstances of each case. See Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. We will not disturb the court's decision regarding a motion for a child custody modification on appeal unless the court abused that discretion. Miller v. Miller
(1988), 37 Ohio St.3d 71, 74. An "abuse of discretion" connotes that the court's attitude is "unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219; Booth v. Booth (1989), 44 Ohio St.3d 142, 144.
 {¶ 12} We give deference to the trial court as the trier of fact because it is best able to observe the witnesses and weigh the credibility of their testimony. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80. If some competent, credible evidence going to all of the essential elements of the case supports a decision, we will not reverse it as being against the manifest weight of the evidence. Masitto v. Masitto (1986),22 Ohio St.3d 63, 66; See C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus.
 {¶ 13} "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal[.]" Davis v. Flickenger (1997),77 Ohio St.3d 415, 419, quoting Seasons Coal at 1277.
 {¶ 14} Although a trial court possesses broad discretion in a custody modification proceeding, we have previously noted that the court's discretion is not absolute. See Beaver v. Beaver
(2001), 143 Ohio App.3d 1. The court must follow the procedure set forth in R.C. 3109.04. Id.
 {¶ 15} R.C. 3109.04(E)(1)(a) provides in relevant part: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies: (i) The residential parent agrees to a change in the residential parent * * *; (ii) The child, with the consent of the residential parent * * * has been integrated into the family of the person seeking to become the residential parent; (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 16} Therefore, the threshold inquiry is whether the court made a finding that a change of circumstances occurred since the prior custody decree that would warrant a change of custody. If no change in circumstances occurred, the requirements for a change of custody cannot be satisfied, and a reviewing court need not examine the court's determination of the child's best interests. Mother does not directly challenge the court's conclusion that a change of circumstances occurred. However, we believe that Corey's expressed desire to reside with his father, combined with the court's finding that Corey actually resided with his father during the 2002-2003 school year constitute sufficient findings to support the court's implied finding that there was a substantial change in Corey's circumstances to warrant a modification of the previous custody order.
 {¶ 17} Having determined that the court adequately found a change of circumstances to have occurred, we now look to the court's analysis of Corey's best interest.
 {¶ 18} Here, in determining what was in Corey's best interest, the court focused very heavily upon mother's failure to object to the changed custody arrangement until father sought to modify his child support obligation, Corey's improved academic performance while he resided with Father, and his integration into his Father's home during the 2002-2003 school year.
 {¶ 19} Mother contends that the court abused its discretion by relying upon its finding that she did not object to Corey residing with his father until Father sought to modify his child support obligation when the record clearly contradicts this finding.
 {¶ 20} In its decision, the court states, "[I]t is interesting to note that during the year that Corey resided with his father and stepmother, his father continued to pay full support. The Mother did not come and get Corey until two weeks after the Father went into the Washington County Child Support Enforcement Agency and asked for an Administrative Review of his child support obligation." Later in its decision, and just before it determines that it is in Corey's best interest to reside with Father, the court states: "[t]his court must note that the Mother did not oppose leaving Corey with the Father until he undertook to terminate paying support."
 {¶ 21} Our review of the record reveals that the court's findings regarding Mother's motivation for removing Corey from Father's home are erroneous and plainly contradicted by the court's own entries. Specifically, on February 6, 2003, the court filed an entry abating Father's child support obligation for Corey effective August 26, 2002. Then, on August 6, 2003, upon information the Washington County Child Support Enforcement Agency provided to the court, the court reinstated Father's obligation to pay child support for Corey effective July 11, 2003. Attached to the entry is a letter from Mother, representing that Corey returned to her home on July 11, 2003, exactly thirteen days before Father filed his motion to modify parental rights. Thus, instead of Mother seeking to regain physical custody of Corey in response to Father's efforts to terminate his child support obligation, the record reflects that Father filed his motion to modify parental rights on July 24, 2003 in response to Mother's request to reinstate his child support obligation for Corey when he returned to live with her.
 {¶ 22} A court's reliance upon inaccurate information does not always rise to the level of an abuse of discretion. Lancionev. Lancione (Sept. 20, 1994), Franklin App. No. 94APF03-308. The Ohio Supreme Court has noted, "`an abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an `abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" State v. Jenkins (1984), 15 Ohio St.3d 164,222, quoting Spaulding v. Spaulding (1959), 355 Mich. 382,384-385.
 {¶ 23} Here, in light of the substantial importance that the court placed upon its clearly erroneous finding that Mother only objected to the modified custody arrangement after Father sought to reduce his child support obligation, we conclude that the court acted arbitrarily and unreasonably in relying upon said finding to support its award of custody to Father. The court's unfounded belief that mother was content to let Corey live with Father as long as she continued to receive child support appears to have colored the court's perception of the other evidence in this case and given rise to a bias against Mother. For example, the court concluded that Father had "turned his life around" despite the fact that Father admitted serving seven weekends in jail in 2003 for telephonically harassing Mother's current husband. Additionally, the court noted Corey's improved grades, but ignored evidence that he had thirty-one tardies and six unexcused absences while residing with Father, and was on the verge of truancy charges. Finally, the court apparently did not consider Corey's use of marijuana while in Father's care.
 {¶ 24} While we recognize that we cannot reverse the trial court's decision based upon our analysis of the weight and credibility of the evidence adduced at trial, we cannot help but question whether the court would have viewed the evidence and testimony in a different light if it had not erroneously reached the conclusion that Mother's actions were motivated by her pocketbook rather than Corey's best interests.
 {¶ 25} Accordingly, we reverse the judgment and remand this cause for further proceedings consistent with this opinion.
Judgment Reversed and Remanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion and that Appellant shall recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, J. and Harsha, J.: Concur in Judgment and Opinion.