[Cite as *In re Z.N.T.*, 2019-Ohio-915.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | CASE NO. CA2018-05-035 |
| Z.N.T. | : | O P I N I O N<br>3/18/2019 |
|  | : |  |
|  | : |  |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. CR2012JH19822

Mark J. Tekulve, 785 Ohio Pike, Cincinnati, OH 45245, for appellee

Mark A. Humbert, 810 Sycamore Street, 4th Floor, Cincinnati, OH 45202, for appellant

**M. POWELL, J.**

{¶ 1} Appellant ("Mother") appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, amending the parties' shared parenting plan and denying her motion for findings of fact and conclusions of law.

{¶ 2} Appellee ("Father") and Mother are the parents of a six-year-old child. The parties were never married. In 2015, the parties entered into a shared parenting plan which was subsequently adopted by the Clermont County Court of Common Pleas, Juvenile Division (the "juvenile court"), in a Decree of Shared Parenting. Paragraph N of the shared parenting plan provided that "The Clermont County, Ohio Juvenile Court shall not retain

jurisdiction to enforce and/or modify any and all provisions of this Shared Parenting Plan in the best interest of the minor child, as provided by law."

{¶ 3} In July 2017, Father moved the juvenile court to find Mother in contempt for failing to comply with the shared parenting plan regarding parenting time. Mother moved to dismiss the motion, arguing that the juvenile court did not have jurisdiction to enforce the shared parenting plan pursuant to paragraph N of the plan. Mother further argued that the child had been living in Hamilton County for the last three years. On September 14, 2017, a juvenile court magistrate granted Mother's motion to dismiss for lack of jurisdiction. The juvenile court adopted the magistrate's decision that same day. Father never filed objections to the magistrate's September 2017 decision. Subsequently, the parties pursued their parenting dispute in the Hamilton County Court of Common Pleas, Juvenile Division.

{¶ 4} In February 2018, while parenting matters were pending in the Hamilton County Juvenile Court, Father moved the juvenile court to amend the shared parenting plan and issue a nunc pro tunc decree of shared parenting. Specifically, Father argued that the no jurisdiction language in paragraph N of the shared parenting plan was a nullity and void as against public policy and needed to be corrected by the juvenile court. Mother moved to strike Father's motion, citing paragraph N of the plan. Mother further argued that Father's motion was in essence an untimely Civ.R. 60(B) motion, and that the Hamilton County Juvenile Court had accepted jurisdiction.

{¶ 5} On March 2, 2018, the juvenile court magistrate granted Mother's motion to strike Father's motion. In his decision, the magistrate indicated that upon contacting the Hamilton County Juvenile Court administrative magistrate to discuss the jurisdictional issue between the two courts, the administrative magistrate advised that the Hamilton County Juvenile Court had accepted jurisdiction over the parties and subject matter, had recently held a hearing on the matter, and was scheduled to conduct another hearing in May 2018.

In light of the foregoing, the juvenile court magistrate found that the juvenile court "no longer ha[d] jurisdiction over the parties or subject matter herein. The Hamilton County Juvenile Court has accepted and assumed continuing jurisdiction and shall preside over any parenting proceedings henceforth."

{¶ 6} Father filed objections to the juvenile court magistrate's March 2018 decision. The juvenile court held a hearing on Father's objections. By judgment entry filed on April 24, 2018, the juvenile court sustained Father's objections, denied Mother's motion to strike, and amended paragraph N of the shared parenting plan by deleting "the word 'not' before the word 'retain.'" The juvenile court found that paragraph N was inconsistent with the Decree of Shared Parenting and several other provisions of the shared parenting plan which retained the juvenile court's jurisdiction. The court further found that paragraph N was against public policy, as follows:

> Under the doctrine of parens patriae, courts are entrusted to protect the best interest of children. Although the "law permits parties to voluntarily waive a number of important legal rights * * * a waiver of rights will be recognized only when the waiver does not violate public policy." Parties may not contractually abnegate their right to invoke the continuing jurisdiction of the court over allocations of parental rights and responsibilities. The actions of the parties in inserting, "the continuing jurisdiction" paragraph as presently worded is against public policy. The parents were attempting to contractually abnegate their right to invoke the continuing jurisdiction of the court over the allocation of parental rights and responsibilities in total while attempting to reserve jurisdiction on certain matters.

(Ellipses sic and citations omitted.)

{¶ 7} Mother moved the juvenile court for findings of fact and conclusions of law. Mother argued that the juvenile court's April 24, 2018 judgment entry failed to take into account the fact that the Hamilton County Juvenile Court had jurisdiction and the juvenile court did not. Moreover, the judgment entry also failed to address Mother's argument that Father's February 2018 motion to amend the shared parenting plan was an untimely filed

Civ.R. 60(B) motion or objection to the magistrate's September 2017 decision. Accordingly, Mother requested that the juvenile court "address the issues to clarify on what basis it can claim jurisdiction or properly hear an untimely filed motion."

{¶ 8} On May 8, 2018, the juvenile court denied Mother's motion for findings of fact and conclusions of law. The juvenile court found that Civ.R. 52 did not apply to proceedings in juvenile court. The juvenile court further rejected Mother's argument that Father's February 2018 motion was untimely because "[the court] has the continuing jurisdiction to construe and enforce the terms of the shared parenting plan. The father's previous inaction is not deemed to be a waiver of his rights, inasmuch as the Court will not recognize a waiver of rights that is against public policy."

{¶ 9} Mother now appeals, raising two assignments of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED TO THE PREJUDICE OF MOTHER-APPELLANT IN DENYING MOTHER'S MOTION FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW.

{¶ 12} Mother argues the juvenile court erred in finding that Civ.R. 52 does not apply to juvenile court proceedings and in denying her motion for findings of fact and conclusions of law.

{¶ 13} Civ.R. 52 provides, in relevant part, that

> When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the findings of fact found separately from the conclusions of law.

{¶ 14} The Ohio Supreme Court has held that a trial court has a mandatory duty

- 4 -

under Civ.R. 52 to issue findings of fact and conclusions of law when a party makes a timely request. *In re Adoption of Gibson*, 23 Ohio St.3d 170, 173 (1986); *In re Guardianship of Bernie*, 12th Dist. Butler No. CA2018-01-005, 2019-Ohio-334, ¶ 10. The purpose of Civ.R. 52 is "to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment." *Werden v. Crawford*, 70 Ohio St.2d 122, 124 (1982). Thus, the findings and conclusions must articulate an adequate basis upon which the appellant can mount a challenge. *In re Estate of Hoppes*, 12th Dist. Fayette No. CA2014-04-007, 2014-Ohio-5749, ¶ 24. The findings and conclusions must also express sufficient detail to enable the appellate court to determine how the lower court resolved disputed factual issues and applied the law. *Id.*

{¶ 15} Juv.R. 1(A) provides that the Rules of Juvenile Procedure "prescribe the procedure to be followed in all juvenile courts of this state in all proceedings coming within the jurisdiction of such courts, with the exceptions stated in subdivision (C)." In turn, Juv.R. 1(C) provides,

> [The Rules of Juvenile Procedure] shall not apply to procedure (1) Upon appeal to review any judgment, order, or ruling; (2) Upon the trial of criminal actions; (3) Upon the trial of actions for divorce, annulment, legal separation, and related proceedings; (4) In proceedings to determine parent-child relationships, provided, however that appointment of counsel shall be in accordance with [Juv.R.] Rule 4(A); (5) In the commitment of the mentally ill and mentally retarded; (6) In proceedings under [R.C.] 2151.85 to the extent that there is a conflict between these rules and [R.C.] 2151.85.

(Brackets added.)

{¶ 16} In support of its finding that Civ.R. 52 does not apply to juvenile court proceedings, the juvenile court cited *In re C.B.*, 2d Dist. Montgomery No. 23615, 2010-Ohio-2129; and *In re R.H.*, 2d Dist. Montgomery No. 22352, 2008-Ohio-773. Both decisions held that "Civ.R. 52 has no application to proceedings in the Juvenile Court" because "the Rules

of Juvenile Procedure 'prescribe the procedure to be followed in all juvenile courts of the state in all proceedings' except those identified in paragraph (C), which have no application to this case[.]" *In re C.B.* at ¶ 38, fn.5; *In re R.H.* at ¶ 29. Both cases involved a juvenile court's exercise of its delinquency jurisdiction. This case involves the juvenile court's exercise of its child custody jurisdiction. Both decisions are therefore not applicable.

{¶ 17} The record does not indicate whether this case originated as a parentage action pursuant to R.C. Chapter 3111. The record suggests that following the birth of the child, Father signed the birth certificate and acknowledged his paternity. In any event, the proceedings before the juvenile court involve the allocation of parental rights and responsibilities for the child, and not a matter of parentage.

{¶ 18} R.C. 2151.23 sets forth the original jurisdiction of juvenile courts, and states that "the juvenile court shall exercise its jurisdiction in child custody matters in accordance with [R.C.] 3109.04[.]" R.C. 2151.23(F)(1); *In re A.D.*, 12th Dist. Fayette No. CA2012-07-023, 2013-Ohio-1308, ¶ 13. "When making the allocation of the parental rights and responsibilities for the care of the children * * * in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1).

{¶ 19} The Ohio Supreme Court has held that "Civ.R. 52, requiring separate findings of fact and conclusions of law upon timely request, applies to change of custody proceedings[.]" *Werden*, 70 Ohio St.2d at 124. The supreme court has further held that "[t]he Rules of Civil Procedure apply to custody proceedings in juvenile court except when they are clearly inapplicable." *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, ¶ 11, citing Civ.R. 1(C)(7) and *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357 (1994). We find that the Civil Rules are not "clearly inapplicable" here, especially in light of Juv.R. 45, which provides, "If no procedure is specifically prescribed by these rules or local rule, the court

shall proceed in any lawful manner not inconsistent with these rules or local rule." *In re H.W.* at ¶ 11. While Juv.R. 40(D)(3)(a)(ii) allows a party to request findings of fact and conclusions of law after a juvenile court magistrate issues a decision, the Rules of Juvenile Procedure do not provide parties with a similar avenue once a juvenile court enters its judgment. We further note that App.R. 4(B)(2)(d) tolls the time for filing a notice of appeal in "a juvenile proceeding if a party files a timely motion for * * * findings of fact and conclusions of law under Civ.R. 52" until the court "enters an order resolving" the request. *See In re A.J.B.*, 2d Dist. Miami No. 11CA006, 2011-Ohio-6176.

{¶ 20} In light of the foregoing, we find that the juvenile court erred in finding that Civ.R. 52 did not apply within the context of this case. Nevertheless, the error is harmless because the juvenile court's judgment entry sets forth sufficient facts and legal conclusions.

{¶ 21} A judgment entry satisfies the requirements of Civ.R. 52 where it recites sufficient facts and legal conclusions which, when considered together with other parts of the record, provide an adequate basis upon which to decide the legal issues on appeal. *Stone v. Davis*, 66 Ohio St.2d 74, 85 (1981); *McNeilan v. Ohio State Univ. Med. Ctr.*, 10th Dist. Franklin No. 10AP-472, 2011-Ohio-678, ¶ 43.

{¶ 22} The juvenile court's April 24, 2018 judgment entry sets forth sufficient facts and legal conclusions upon which to review and decide the legal issues on appeal. The juvenile court noted that the shared parenting plan had a provision that the juvenile court have no further jurisdiction to enforce the shared parenting plan (paragraph N), whereas several other provisions in the plan retained such jurisdiction. The juvenile court found that those provisions as well as the Decree of Shared Parenting were inconsistent with paragraph N. The juvenile court further found that paragraph N was against public policy because parties cannot contractually abnegate their right to invoke the continuing jurisdiction of the court over allocations of parental rights and responsibilities. The juvenile

court's April 24, 2018 judgment entry is adequately detailed and sufficient to advise this court of the basis for the lower court's decision and therefore satisfies the requirements of Civ.R. 52. The juvenile court, therefore, did not err in denying Mother's motion for findings of fact and conclusions of law.

{¶ 23} Finally, we note that Mother's motion for findings of fact and conclusions of law was untimely because it was not filed within seven days of the juvenile court's April 24, 2018 judgment entry as required under Civ.R. 52. *See Wollum v. Wollum*, 2d Dist. Clark No. CA 2220, 1987 Ohio App. LEXIS 5487 (Jan. 8, 1987).

{¶ 24} Mother's first assignment of error is overruled.

{¶ 25} Assignment of Error No. 2:

{¶ 26} THE TRIAL COURT ERRED TO THE PREJUDICE OF MOTHER-APPELLANT IN FINDING FATHER'S OBJECTIONS TO THE MAGISTRATE'S DECISION WERE NOT UNTIMELY.

{¶ 27} This assignment of error involves Father's failure to object to or otherwise challenge the juvenile court magistrate's September 2017 decision dismissing Father's contempt motion for lack of jurisdiction pursuant to paragraph N of the shared parenting plan. Mother asserts that Father's objections to the magistrate's March 2018 decision, which struck Father's motion to amend the shared parenting plan for lack of jurisdiction, were in fact untimely objections or an untimely Civ.R. 60(B) motion to the juvenile court's adoption of the magistrate's September 2017 decision. Mother argues the juvenile court erred in finding that Father's failure to timely challenge or object to the magistrate's September 2017 decision did not result in a waiver of his rights because of public policy concerns.

{¶ 28} As stated above, the juvenile court rejected Mother's argument that Father's February 2018 motion to amend the shared parenting plan was untimely, finding that "[the

court] has the continuing jurisdiction to construe and enforce the terms of the shared parenting plan. The father's previous inaction is not deemed to be a waiver of his rights, inasmuch as the Court will not recognize a waiver of rights that is against public policy." In support of its finding that paragraph N of the shared parenting plan was against public policy and that Father had not waived his rights, the juvenile court cited *Kelm v. Kelm*, 92 Ohio St.3d 223 (2001); and *Myers v. Parks*, 167 Ohio App.3d 329, 2006-Ohio-2352 (6th Dist.).

{¶ 29} In *Kelm*, the Ohio Supreme Court considered whether, in a domestic relations case, matters relating to child custody and visitation may be resolved through arbitration. *Kelm* involved a shared parenting plan which provided, inter alia, that any future disputes between the parties regarding child custody or visitation would be submitted to arbitration. The supreme court held that the parties could not bind the trial court by agreeing to let someone else, an arbitrator, resolve disputes regarding child custody and visitation. Emphasizing that "under the doctrine of *parens patriae*, courts are entrusted to protect the best interests of children," the court held, "[o]nly the courts are empowered to resolve disputes relating to child custody and visitation." *Kelm* at 224.

{¶ 30} The supreme court held that while the "law permits parties to voluntarily waive a number of important legal rights, * * * a waiver of rights will be recognized only when the waiver does not violate public policy." (Citations omitted.) *Kelm*, 92 Ohio St.3d at 226. The court emphasized that "[w]ith respect to matters of custody and visitation, the central focus is * * * the best interest of the children. The duty owed by the courts to children under the doctrine of *parens patriae* cannot be severed by agreement of the parties." *Id.* "As the representative of the State, the [court's] responsibility to ensure the best interests of the children supersedes that of the parents." *Id.* at 227.

{¶ 31} The supreme court subsequently rejected the argument that the doctrines of res judicata and waiver barred the mother from challenging the arbitration provision in the

shared parenting plan:

> To hold that appellee has waived her right to challenge the arbitration agreement and to permit arbitration of the parties' child custody and visitation disputes would prevent the trial court from fulfilling its role as *parens patriae*. Because this is contrary to public policy, we conclude that appellee has not, by virtue of her acquiescence to the original shared parenting plan, waived her right to challenge that plan's provision for arbitration of custody and visitation matters.

*Id.* at 226.

{¶ 32} Likewise, the supreme court declined to apply the doctrine of res judicata:

> [A]ppellee's failure to challenge the arbitration clause in the previous divorce action could not deprive the trial court of jurisdiction to consider appellee's subsequent motion to modify or terminate the shared parenting plan. The trial court has a continuing responsibility under R.C. 3109.04(B)(1) and (E)(1)(a) to protect the best interests of the children. As we have already held, the parties' agreement to arbitrate custody and visitation disputes impermissibly interferes with the court's ability to carry out this responsibility.

*Kelm*, 92 Ohio St.3d at 228. The supreme court then concluded, "The doctrine of *res judicata*, like the doctrine of waiver, cannot be relied upon to enforce this otherwise unenforceable agreement." *Id.*

{¶ 33} *Myers* involved a provision in a divorce decree which provided that $10,000 was due and owing to the mother if the father filed any motion in court, except to modify child support. When the father moved to review the allocation of parental rights, the mother moved to enforce the above provision and be awarded $10,000. The trial court found that the provision was against public policy and thus unenforceable because it was, in effect, a restraint on the father's right to invoke the court's continuing jurisdiction regarding the custody and care of the parties' child. *Myers*, 2006-Ohio-2352 at ¶ 3.

{¶ 34} In upholding the trial court's decision, the Sixth Appellate District held that "[a]lthough the parties did not entirely waive [the father's] right to access the court, but only

conditioned access upon payment of $10,000, the payment acts as a restraint on access found impermissible," and the provision was meant to deter action. *Id.* at ¶ 8, 12. The appellate court further held, "[p]arties may not contractually abnegate their right to invoke the continuing jurisdiction of the court over allocations of parental rights and responsibilities." *Id.* at ¶ 6. *See also Jean-Paul L. v. Michelle M.*, 6th Dist. Wood Nos. WD-06-040 and WD-06-051, 2007-Ohio-1042 (finding that the parties' contractual arrangement, which forever barred removal of the child from a specified geographic area, was antithetical to public policy and unenforceable because it would have restrained or otherwise inhibited the trial court's nondelegable duty to determine that which was in the child's best interest, pursuant to R.C. 3109.04[B]).

{¶ 35} We find the reasoning in *Kelm* to be persuasive and applicable here. Paragraph N of the shared parenting plan removed the resolution of future disputes from the juvenile court's continuing jurisdiction over the allocation of parental rights and responsibilities, or the enforcement or modification thereof, and restrained or otherwise inhibited the juvenile court's nondelegable duty to determine that which is in a child's best interest. "The duty owed by the courts to children under the doctrine of *parens patriae* cannot be severed by agreement of the parties." *Kelm*, 92 Ohio St.3d at 226. Paragraph N was therefore against public policy and unenforceable.

{¶ 36} It follows then that the juvenile court did not err in finding that Father's failure to timely challenge or object to the magistrate's September 2017 decision did not result in a waiver of his rights. As stated above, the Ohio Supreme Court rejected an argument similar to Mother's waiver argument. Because paragraph N is contrary to public policy, Father did not, by virtue of his acquiescence to the original shared parenting plan and failure to object to or otherwise challenge the magistrate's September 2017 decision, waive his right to challenge the provision removing the continuing jurisdiction of the juvenile court over

allocation, enforcement, and modification of parental rights and responsibilities. *Id.* at 226. As the supreme court stated, "[the parent's] failure to challenge the arbitration clause in the previous divorce action could not deprive the trial court of jurisdiction to consider [that parent's] subsequent motion to modify or terminate the shared parenting plan." *Id.* at 228. "The doctrine of res judicata, like the doctrine of waiver, cannot be relied upon to enforce this otherwise unenforceable agreement." *Id.*

{¶ 37} Mother's second assignment of error is accordingly overruled.

{¶ 38} Judgment affirmed.


RINGLAND, P.J., and PIPER, J., concur.