[Cite as *In re A.Z.*, 2020-Ohio-2941.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

IN RE A.Z.

A Minor Child

[Appeal by T.Z., Father]

:
:
:
:
:

No. 108627

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART
**RELEASED AND JOURNALIZED:** May 14, 2020

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU13112412

### *Appearances:*

David S. Bartos, *for appellant.*

Polito, Rodstrom, Burke, L.L.P., and Michael G. Polito,
and Michael B. Granito, *for appellee.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Appellant, the acknowledged registered father of A.Z. ("Father"),
appeals the juvenile court's judgment on multiple motions filed by Father relating
to the allocation of parental rights and responsibilities between Father and the

mother of A.Z. ("Mother").[1]  The motions include multiple contempt motions for missed visitation and modification of child support.  A.Z. was born in 2003, and will be 18 years of age in 2021.

{¶ 2}  We affirm the trial court's judgment in part and reverse in part.  We reverse the trial court's denial of the child support modification motion and remand it for a hearing.  We affirm the remainder of the judgment.

## I.   Assignments of Error

{¶ 3}  Father assigns the following errors:

I.     The court committed prejudicial error by adjudicating the motions to modify the shared parenting plan, and motions to show cause/contempt by determining erroneous facts in ruling that neither party filed a shared parenting plan in support of their motions and that the parties had an agreement to have 14 days of make-up visitation to dismiss said pending motions thus depriving the appellant of his right to a trial and due process on the pending motions.

II.     The trial court's sua sponte dismissal of the appellant's [sic] effectively dismissed the appellant's motion to modify child support with prejudice without notice or opportunity to be heard, thus violating appellant's right to due process under Article I, Section 16 of the Ohio Constitution.

III.     The trial court's sua sponte dismissal of the appellant's motions without notice violated the appellant's right under Article I, Section 16 of the Ohio Constitution.

IV.     The trial court violated appellant's right to due process and committed reversible and prejudicial error by denying the appellant's motions to vacate the protective order, the order granting the motion to quash the subpoena to [the child's counselor] and order granting the motion in limine to exclude the testimony of [the counselor].

---

[1] The existence of the parent-child relationship was established by virtue of Father's acknowledgment of paternity filed with the Ohio Central Paternity Registry pursuant to R.C. Chapter 3111.

## II. Discussion

{¶ 4} We combine the errors for ease of analysis.

### A. Standard of Review

{¶ 5} The discretion of a trial court is broad in custody proceedings. *In re S.R.L.*, 8th Dist. Cuyahoga No. 98754, 2013-Ohio-3236, ¶ 17, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), paragraph one of the syllabus.

> A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 17-18 (2d Dist.), citing *Black's Law Dictionary* 11 (8 Ed.Rev.2004). When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

*Id.* at ¶ 17.

{¶ 6} "In conducting our review, we must make every reasonable presumption in favor of the trial court's findings of fact." *Id.* at ¶ 18, citing *Myers v. Garson*, 66 Ohio St.3d 610, 614, 614 N.E.2d 742 (1993). "We give deference to the trial court as the trier of fact because it is 'best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

### B. Relevant History

{¶ 7} This case was initiated in 2013 by Father's application to determine custody and visitation pursuant to R.C. 2151.23(A)(2) and has been contentious from inception. A guardian ad litem ("GAL") was appointed for A.Z. In 2014, each

party filed a motion to show cause that alleged the other party violated a court order that prohibited discussing the custody proceedings with A.Z. and making frivolous abduction allegations.

{¶ 8} In March 2015, the parties finally agreed on a shared parenting plan ("SPP") that was adopted by the trial court. On March 25, 2016, Father filed motions for contempt and to modify the SPP ("2016 Motions"). Father alleged that Mother failed to: (1) comply with the visitation schedule for four midweek and four weekend missed visits, (2) facilitate visits when the child was allegedly ill, and (3) terminate the services of counselor Griswold purportedly due to Griswold's refusal to provide Father with access to A.Z.'s records.

{¶ 9} The modification motion requests designation of Father as custodial and residential parent under R.C. 2151.23(F)(1) and 3109.04(F)(1)(f) based on changed circumstances. Father cites the same grounds set forth in the contempt motion but adds that "once [Father] received copies of the counseling records" referenced in the contempt motion, he learned that the child was sometimes sleeping with Mother, an issue Father raised in November 2013 that was allegedly resolved.

{¶ 10} The July 2016 court custody diagnostic clinic report opined that the missed visits were merely "reflective of dysfunctional family communication" and that "[a]ll parties seemed to play a role." Diagnostic Report, p. 7. The clinician was not concerned that A.Z. sometimes slept with Mother. The sleeping arrangement existed when all parties resided together and did not constitute a changed

circumstance. The clinician did not support modification of the SPP because there had been no change of circumstances or best interest concerns to support modification.

{¶ 11} A.Z. was interviewed in camera and at the July 28, 2016 pretrial; the trial court continued the 2016 Motions hearing pending referral to family counseling and delayed a ruling on Father's motion for an independent custody evaluation. On June 13, 2017, Father moved to reduce his child support obligation due to changes in the parties' incomes.

{¶ 12} On July 24, 2017, Mother requested an in camera interview with A.Z. motivated by Father's refusal to agree to the summer parenting time schedule proposed by then 14-year-old A.Z. and the GAL. Mother also moved to modify the SPP at A.Z.'s request to allow him to reside with Mother during the summer to remain involved with sports and friends.

{¶ 13} Mother also requested that the parties communicate through the county's electronic parental communications system due to Father's refusal to communicate directly. At the July 27, 2017 hearing, the trial court approved the communications request, noted that the parties were working on an agreed entry to modify visitation, and continued the hearing pending the in camera interview.

{¶ 14} Several filings and continuances later, at a March 19, 2018 hearing, the parties discussed visitation, psychiatric evaluation, child support, and the GAL's recommendations. On March 21, 2018, the trial court issued a temporary interim visitation order noting "the parties * * * seem unable to agree on the question of

what visitation they agreed upon in a previous entry." Journal entry No. 0911033022 (Mar. 21, 2018).

{¶ 15} On April 16, 2018, Mother moved to modify the SPP to adopt the county's standard parenting time schedule on the grounds that the child was approaching 15 years of age and the parents resided more than 45 miles but less than 200 miles apart.[2] The parties also engaged in various discovery disputes as the trial date approached.

{¶ 16} Father supplemented the 2016 contempt motion in May 2018 claiming several missed hours of visitation. On August 7, 2018, Father filed a second supplement asserting Mother began exchanging A.Z. at 8:00 a.m. on Monday instead of 8:30 p.m. on Sunday evening in July 2018.

{¶ 17} On September 4, 2018, the trial court allowed Father's counsel to withdraw due to a lack of client cooperation and irreconcilable differences. On January 11, 2019, a pretrial was conducted on the pending contempt and modification motions. The matter was set for a March 6, 2019 trial.

{¶ 18} On February 11, 2019, Father filed an additional motion to show cause for violation of the SPP. This motion reiterated the claim that Father did not consent to counseling by Griswold and that he was denied access to the counseling records in contravention of the SPP by Griswold and the social worker. Father also advised that he filed complaints against the social worker and counselor with the state board

---

[2] The distance does not appear to be a change in circumstance from the time of the SPP. The record does not reflect a change of address by either party.

who instructed the counselor and social worker to conclude their involvement.[3] Father charged that Mother and her counsel should be held responsible for the actions of the counselor and social worker.

{¶ 19} The trial, captioned an "evidentiary hearing" by the trial court, began on March 6, 2019. (Tr. 13.) After a discussion of the pending issues, the trial court recited the list of pending motions deemed to be denied and advised the parties to work things out.

{¶ 20} The next morning, counsel for Father informed the trial court that the parties "thought they had an agreement" but "comments began to fly back and forth into this morning that we no longer have an agreement, and this is very typical in this case." (Tr. 20.) "There was a compromise." (Tr. 21.) "The GAL was [present] through the majority of it." *Id.* Father's counsel agreed with the trial court's suggestion that testimony from the GAL would be helpful. "[W]e can hear what he * * * believes happened yesterday or what he believes is in the best interest of the child." (Tr. 22.) The GAL confirmed the parties' agreement to the 14-day make-up period but stated the parties could not agree on the schedule.

{¶ 21} The GAL testified that he was assigned to A.Z. in 2013 and there have been ongoing issues between the parents. In response to Father's 2016 Motions, the GAL met with the parties and with counselors. He advised that the child was fond

---

[3] The Board responded that it did not support formal discipline. Father withdrew his trial subpoena for the board members the morning of the hearing. The trial court also granted Mother's motion to quash counselor Griswold's subpoena.

of both parents but there were times when Father arrived to pick up A.Z. for a visit, A.Z. would enter the vehicle, then refuse to leave and re-enter Mother's home.

{¶ 22} The GAL advised against awarding custody to Father due to the need to maintain continuity and that A.Z. was approaching his sixteenth birthday, nor did the GAL embrace reducing Father's visitation time at the risk of interfering with the child's bond with Father. The GAL recommended that the SPP remain as is and that Father receive visitation compensation time of 14 days. The GAL also reported that A.Z.'s psychologist was pleased with the progress of the parties and A.Z.'s relationship with both parents.

{¶ 23} At the conclusion of the GAL's testimony, the trial court stated that the parties could propose a schedule or the trial court would do it:

> I'll do it. I mean, I do it all the time. It's not like a big deal, but you should work this out. If you can't do it, I'll do it. And I won't do it maliciously.
>
> I have nothing against you, dad, and nothing against you, mom. I try to do the best I can so that you get the make-up time which I believe you're entitled to without going into a lot of details, and everybody go on and keep building your relationships with the youngster. I mean, you're adults. Whatever you do is your business. You don't have to like one another, I don't care. But I do care about the boy, and I try to take care of all the kids as best I can, and I know what it's like.

(Tr. 58-59.)

{¶ 24} Counsel for Father responded:

> You know, your Honor, I think it would make sense for us to, since the only issue to be determined by the Court is how the 14 days are going to be given to father, if we could each give you a schedule for the summer for the last day.

(Tr. 59.) The trial court replied, "[l]et dad tell me what he wants." *Id.*

{¶ 25} Father's counsel then announced that Father wanted to proceed with trial and take the stand. The trial court replied, "[h]e wants to take testimony. It's your case." (Tr. 60.) After Father was sworn in, counsel advised that "Father had a number of witnesses."[4]

{¶ 26} Father testified that he did not "necessarily" want the trial court to hold mother in contempt.

Counsel: Let's start with, what is it that you want to clarify?

Father: What I wanted to clarify was that the GAL didn't know exactly when I filed the motion to change custody, there was a period over six months where [A.Z.] was being called in sick to school on days that he was to be with me, and that's in my motion for custody that was filed.

And I had also found out about the sleeping issues that were continuing. I wanted all that to stop.

And there was also one other issue was that — and I can't remember now because I don't have my notes, but that the mother's — I'm sorry. I lost my train of thought.

There was also something I wanted to say about the make-up time. * * *

Counsel: Is it your position that you have approximately 15 days of make-up time? That would include —

Father: Yes.

---

[4] The trial court previously granted certain witness protective orders and motions to quash subpoenas in the case. Notwithstanding that fact, new counsel for Father filed subpoenas in case the trial court decided to vacate its prior rulings.

Counsel:    Would you be okay with two additional weeks during the summer as make-up time?

Father:     If that's what is ordered, yes, I would be.

(Tr. 62-63.)

{¶ 27} Father added, "I want [A.Z.] to have a loving relationship with mom, but I want him to have a loving relationship with dad also." (Tr. 63-64.) The court recessed at counsel's request to confer with Father.

{¶ 28} After recess the trial court stated:

Three matters were before the Court. Both Mother and Father had filed a motion to modify the shared parenting plan. There was a show cause motion which concerned make-up visitation. That was to argue the matter of make-up visitation.

Either the Court or the Guardian or anybody would determine that 14 days was to be made up and that Father was to have an additional 14 days.

Neither party filed a new shared parenting plan, but they wish to proceed and have a modified shared parenting plan.

The Court suggested that the parties submit what they wanted in the way of a 14-day structure for dad's make-up.

Counsel for mother has submitted one and the Court will give counsel for father until Friday of next week to submit, if they wish to. If they don't the Court may use the one or the other or neither.

(Tr. 64-65.)

{¶ 29} Father's counsel stated an objection for the record.

Counsel:    [M]y client does not consent to not proceeding with trial. I understand the Court's order is what the Court order is; however, my client does not consent to that and wishes to have a full hearing.

> I understand that the Court is going to make this order and my client would like to have this hearing, and therefore, we would object. * * *

Counsel: Your Honor, in addition to the child support hearing, my client has a number of motions pending, including the show cause, including motion to modify, and therefore we would object.

Court: The show cause, all of the show cause motions concerned visitation problems which [Father] agreed to accept 14 days to settle it.

Counsel: Your Honor, that is not accurate.

Court: Well, that's what he said in here.

Counsel: As a part of the resolution that was agreed upon that fell apart, there is no resolution and, therefore, my client objects. Thank you.

Court: Thank you. You're welcome. Goodbye.

(Tr. 65-67.)

{¶ 30} The trial court's April 26, 2019 journal entry reiterated the trial court's determination that the purpose of the hearing was to entertain the parents' motions to modify the SPP and schedule the agreed 14-day make-up period with Father. All other orders were denied.

## C. Analysis

{¶ 31} R.C. 3109.04 is entitled "[a]llocation of parental rights and responsibilities for care of children; shared parenting." *Id.* "As R.C. 3109.04 makes clear, the guiding principle in a custody matter is the best interest of the child." *In re M.S.*, 8th Dist. Cuyahoga No. 99563, 2013-Ohio-4043, ¶ 21. "Before allocating parental rights and responsibilities, the trial court is required to determine whether

a parenting plan is in the best interest of the child." *Id.* "The ultimate goal of R.C. 3109.04 is to arrive at a decision that is in the best interests of the child." *Id.* at ¶ 25.

{¶ 32} R.C. 3109.04 also governs the modification of shared parenting plans. A party must demonstrate the existence of changed circumstances; that modification is in the child's best interest; and that the advantages of granting the modification outweigh any harm likely to be caused by the change. *In re S.R.L.*, 8th Dist. Cuyahoga No. 98754, 2013-Ohio-3236, at ¶ 19, citing R.C. 3109.04(E)(1)(a).

{¶ 33} R.C. 3109.04(E)(1)(a) provides:

(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

*Id.*

{¶ 34} R.C. 3109.04 "'creates a strong presumption in favor of retaining the residential parent.'" *Sites v. Sites*, 4th Dist. Lawrence No. 09CA19, 2010-Ohio-2748, ¶ 17, quoting *Alessio v. Alessio*, 10th Dist. Franklin No. 05AP-988, 2006-Ohio-2447, ¶ 11. "The statute prohibits a trial court from modifying a prior allocation of parental rights and responsibilities unless the court makes a threshold finding that a change in circumstances has occurred." *Id.*, citing *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶ 15; *Davis*, 77 Ohio St.3d at 417, 674 N.E.2d 1159 (1997). "Without this threshold change in circumstances finding, a court need not proceed with an analysis of the child's best interests under R.C. 3109.04(E)(1) or with any of the factors outlined in R.C. 3109.04(E)(1)(a)." *Id.*, citing *Cowan v. Cowan*, 4th Dist. Washington No. 04CA5, 2004-Ohio-6119, ¶ 16.

{¶ 35} In addition,

> A change in circumstances generally means that an event, occurrence, or situation has arisen since the prior decree that has materially and adversely affected the child. However, this change in circumstances cannot be slight or inconsequential. Rather, it must be substantive and significant. The requirement for finding a substantive and significant change in circumstances is to "'spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment. [R.C. 3109.04(E)] is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.'" *Davis*, 77 Ohio St.3d at 418, quoting *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (1982).

(Citations omitted.) *Id.* at ¶ 18.

{¶ 36} We note that the trial court did not conduct a detailed analysis of the rationale underlying its decision and Father did not move for same under Civ.R. 52.

The Ohio Supreme Court has held that "Civ.R. 52, requiring separate findings of fact and conclusions of law upon timely request, applies to change of custody proceedings[.]" *Werden* [*v. Crawford*], 70 Ohio St.2d 122,] at 124 [435 N.E.2d 424 (1982)]. The Supreme Court has further held that "[t]he Rules of Civil Procedure apply to custody proceedings in juvenile court except when they are clearly inapplicable." *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, ¶ 11, 868 N.E.2d 261, citing Civ.R. 1(C)(7) *and State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 1994-Ohio-302, 626 N.E.2d 950 (1994). * * * We find that the Civil Rules are not "clearly inapplicable" here, especially in light of Juv.R. 45 which provides, "If no procedure is specifically prescribed by these rules or local rule, the court shall proceed in any lawful manner not inconsistent with these rules or local rule." *In re H.W.* at ¶ 11. While Juv.R. 40(D)(3)(a)(ii) allows a party to request findings of fact and conclusions of law after a juvenile court magistrate issues a decision, the Rules of Juvenile Procedure do not provide parties with a similar avenue once a juvenile court enters its judgment. We further note that App.R. 4(B)(2)(d) tolls the time for filing a notice of appeal in "a juvenile proceeding if a party files a timely motion for * * * findings of fact and conclusions of law under Civ.R. 52" until the court "enters an order resolving" the request. *See In re A.J.B.*, 2d Dist. Miami No. 11CA006, 2011-Ohio-6176.

*In re Z.N.T.*, 12th Dist. Clermont No. CA2018-05-035, 2019-Ohio-915, ¶ 19.

{¶ 37} "However, in the absence of a proper Civ.R. 52 request for findings of fact and conclusions of law, [the court] had no independent duty to do so." *Sites,* 4th Dist. Lawrence No. 09CA19, 2010-Ohio-2748, at ¶ 19.

"When questions of fact are tried by a court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * * in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law." [Civ.R. 52]. The failure to request findings of fact and conclusions of law ordinarily results in a waiver of the right to challenge the trial court's lack of an explicit finding concerning an issue. When a party fails to request findings of fact and conclusions of law, we ordinarily presume the regularity of the trial court proceedings. This means that we generally must presume that the trial court applied the law correctly and must affirm if some evidence in the record supports its judgment. *See, e.g., Bugg v. Fancher*, Highland App. No. 06CA12,

2007-Ohio-2019, at ¶ 10, citing *Allstate Financial Corp. v. Westfield Serv. Mgt. Co.*, 62 Ohio App.3d 657, 577 N.E.2d 383 (1989); *see also Yocum v. Means*, Darke App. No. 1576, 2002-Ohio-3803, at ¶ 7. ("The lack of findings obviously circumscribes our review.").

(Citations omitted.) *Id.*

{¶ 38} In the April 2019 final entry, the trial court identified the matters before the court: the parties' motions to modify the SPP and scheduling the 14-day visitation make-up time for Father. The entry also states that neither party filed a new SPP so the court could not choose one plan over the other. The trial court also stated at the hearing that "[n]either party filed a new shared parenting plan, but they wish to proceed and have a modified parenting plan." (Tr. 65.) Neither party disputed the trial court's statement at that time. Father cannot raise for the first time on appeal arguments he failed to raise in the trial court below. *Kleinfeld v. Huntington Natl. Bank*, 8th Dist. Cuyahoga No. 90916, 2008-Ohio-6486, ¶ 37.

{¶ 39} Father counters that he filed proposed plans on September 13, 2016, and April 16, 2018. Mother denies that Father filed any plans and states that the proposed plan that she filed prior to the hearing was rejected.

{¶ 40} Father urges that even without a proposed plan, the trial court has the discretion to modify a shared parenting plan if it is in the child's best interest pursuant to R.C. 3109.04(E)(2)(b):

> The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any

modification to the plan under this division, unless the modification is in the best interest of the children.

{¶ 41} Father is correct that "R.C. 3109.04(E)(2)(b) authorizes a trial court to make its own modifications to the terms of an existing shared-parenting plan at any time." *Palichat v. Palichat*, 2019-Ohio-1379, 135 N.E.3d 389, ¶ 9 (2d Dist.). "It may do so on its own motion or at the request of either party as long as the modifications are in the best interest of the children*." Id.,* citing *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 11 (recognizing that "[o]nce a shared-parenting decree has issued, R.C. 3109.04(E) governs modification of the decree").

{¶ 42} The Ohio Supreme Court distinguished between shared parenting decrees, parenting plans and the applicable modification statutes, R.C. 3109.04(E)(1)(a) and (E)(2)(b), in *Fisher* at ¶ 29-31.

> Within the custody statute, a "plan" is statutorily different from a "decree" or an "order." A shared-parenting order is issued by a court when it allocates the parental rights and responsibilities for a child. R.C. 3109.04(A)(2). Similarly, a shared-parenting decree grants the parents shared parenting of a child. R.C. 3109.04(D)(1)(d). An order or decree is used by a court to grant parental rights and responsibilities to a parent or parents and to designate the parent or parents as residential parent and legal custodian.
>
> However, a plan includes provisions relevant to the care of a child, such as the child's living arrangements, medical care, and school placement. R.C. 3109.04(G). A plan details the implementation of the court's shared-parenting order. For example, a shared-parenting plan must list the holidays on which each parent is responsible for the child and include the amount a parent owes for child support.
>
> A plan is not used by a court to designate the residential parent or legal custodian; that designation is made by the court in an order or decree. Therefore, the designation of residential parent or legal custodian

cannot be a term of shared-parenting plan, and thus cannot be modified pursuant to R.C. 3109.04(E)(2)(b).

*Id.* at ¶ 29-31.

{¶ 43} "R.C. 3109.04(E)(1)(a) applies when a trial court modifies a prior decree allocating parental rights and responsibilities and designating a residential parent and legal custodian." *Palichat* at ¶ 14, citing *Fisher*. "R.C. 3109.04(E)(2)(b) applies when a trial court modifies the terms of a prior shared-parenting plan that has been incorporated into a prior decree." *Id.* at *id.*

{¶ 44} The applicable analyses also differ. "The initial [best interest] determination [under R.C. 3109.04] requires a careful analysis of numerous factors set forth in the statute." *In re A.G.,* 2018-Ohio-289, 104 N.E.3d 258, ¶ 8 (8th Dist.).

{¶ 45} "To limit relitigation of the" initial R.C. 3109.04 factors, custody modification of parenting decrees "under R.C. 3109.04(E)(1)" is based on whether there has been a "change in circumstance that arose after the issuance of the decree in effect at the time, or newly discovered information." *Id.* at ¶ 8, citing *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (10th Dist.1982).

{¶ 46} Conversely, R.C. 3109.04(E)(2) for modification of shared parenting plans does not require a change of circumstances. Thus, "modifying which person is the residential or custodial parent cannot be accomplished through R.C. 3109.04(E)(2)." *Id.* at ¶ 10, citing *Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 26. "[T]o warrant a change of custody * * * the change must

be a change of substance, not a slight or inconsequential change." *Davis*, 77 Ohio St.3d at 418, 674 N.E.2d 1159.

{¶ 47} "[P]arenting time" and "child support" "have all been held to be terms of a shared parenting plan that require only a 'best interest' evaluation for modification." *Palichat*, 2019-Ohio-1379, 135 N.E.3d 389, ¶ 14 (2d Dist.), quoting *Gessner v. Gessner*, 2d Dist. Miami No. 2017-CA-6, 2017-Ohio-7514, ¶ 35.

{¶ 48} We also observe that the SPP was issued pursuant to R.C. 3109.051(D) that, like the R.C. 3109.04(E)(2), requires only a best interest analysis.

> R.C. 3109.051 governs the modification of parenting time or visitation rights. *Braatz v. Braatz*, 85 Ohio St.3d 40, 44-45, 706 N.E.2d 1218 (1999). It requires that court orders that address visitation be "just and reasonable." *In re Bailey*, 1st Dist. Hamilton Nos. C-040014 and C-040479, 2005-Ohio-3039, ¶ 25. "The party requesting a change in visitation rights need make no showing that there has been a change in circumstances in order for the court to modify those rights." *Id.* "Under R.C. 3109.051, a trial court is permitted to modify visitation rights if it determines that the modification is in the child's best interest." *Lisboa v. Lisboa*, 8th Dist. Cuyahoga No. 92321, 2009-Ohio-5228, ¶ 11; *see also In re A.J.*, 8th Dist. Cuyahoga No. 99881, 2013-Ohio-5737, ¶ 10. In determining whether a modification is in the child's best interest, the court is guided by the factors set forth in R.C. 3109.051(D).

*In re I.A.G.*, 8th Dist. Cuyahoga No. 103656, 2016-Ohio-3326, ¶ 15.

{¶ 49} Thus, the legislature has empowered the trial court to broadly wield its statutory authority to protect the best interests of the child. The GAL, who has served as a GAL since 1984, has been with A.Z. since 2013. The GAL testified that he was familiar with the "numerous motions on the table including two motions for

change of custody and other motions" filed in the case. (Tr. 15.) He investigated the cited concerns and concluded they were primarily unfounded.

{¶ 50} The GAL has also been actively involved with the parties and counselors and said that he "worries that any change" to the visitation schedule would "be detrimental and anti-productive" "given the progress of the father-son relationship." (Tr. 27.) The court diagnostic clinic, counselors, and psychologist recommended against modification of the SPP.

{¶ 51} The GAL also cited the fact that A.Z. was 15 years old at the time of the hearing.

> And you've gotta understand, your Honor, we're not talking about a 3-year-old or a 5-year-old or an 8-year-old. When this case came in here he was 13. Now he's 15 years old, so he's getting older, and unless you can show that the party that the child's living with is on drugs or a sexual predator or whatever, there's no reason to change custody when you get that age.

(Tr. 26.)

{¶ 52} Father stated on the record that he was fine with the 14-day make-up period and that, if A.Z. wanted to return to Mother's home if the make-up period involved more than the customary number of consecutive weeks, he would oblige. All parties agreed the 14-day make-up period was acceptable and the remaining issue was simply scheduling the time.

{¶ 53} The trial court has been involved with the case and parties for approximately six years. Multiple motions and affidavits have been filed, some containing redundant information, in camera interviews of A.Z. have been

conducted, and psychological and counseling services have been rendered throughout the years.

{¶ 54} The trial court conducted a two-day evidentiary hearing on the pending matters. Ultimately, the trial court rejected all motions except to implement the 14-day make-up period as delineated in the journal entry.

{¶ 55} Not only does the record support that maintaining the current SPP is in the best interest of the child, the record also demonstrates that there has been no change of circumstance that warrants a change of custody. The trial court is vested with the authority to make the decision. We also note that within the next year to 18 months, A.Z. will reach his 18th birthday.

{¶ 56} We are also "mindful of the 'elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him.'" (Citations omitted.) *Toth v. Toth*, 5th Dist. Guernsey No. 2012-CA-21, 2013-Ohio-845, ¶ 58, quoting *Smith v. Flesher*, 12 Ohio St.2d 107, 110, 233 N.E.2d 137 (1967); App.R. 12(D).

{¶ 57} It is axiomatic that a trial court has inherent authority to manage its docket and the progress of the proceedings before it. *Cromartie v. Goolsby*, 8th Dist. Cuyahoga No. 93438, 2010-Ohio-2604, ¶ 18. The case has been pending since 2013. A.Z. will be 17 years old in a few months.

{¶ 58} Also, "'the trial judge is in the best position to view the witnesses and observe the demeanor, gestures and voice inflections so as to weigh the credibility

of the presented testimony.'" *In re J.T.S.*, 12th Dist. Preble No. CA2014-09-009, 2015-Ohio-364, ¶ 21, quoting *In re Guardianship of Smith,* 12th Dist. Preble No. CA2002-12-012, 2003-Ohio-4247, ¶ 11. "This is because '[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'" *Id.*, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

**{¶ 59}** Where, as here, the record contains competent credible evidence that supports the trial court's judgment and, in the absence of findings of facts and conclusions of law pursuant to Civ.R. 52, we presume regularity and that the trial court properly applied the law to the facts. *Sites*, 4th Dist. Lawrence No. 09CA19, 2010-Ohio-2748, at ¶ 19.

**{¶ 60}** The trial court acknowledged on the record that Father is entitled to a hearing on the motion to modify child support, but denied all remaining motions in its final entry. Therefore, this court reverses the denial of the motion and remands the issue to the trial court for a hearing.

## III. Conclusion

**{¶ 61}** The trial court's judgment is affirmed in part and reversed in part. The case is remanded for a hearing on Father's motion to modify child support.

It is ordered that each party equally bear the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

---

ANITA LASTER MAYS, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY